**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

*Attorney for Plaintiffs and the Proposed Class*

[*Additional Attorneys on Signature Page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINA TAYLOR, STUART SELIS, BETH CUSIMANO, and KARL GREISSINGER, individually and on behalf of all others similarly situated, | : Civil Action No.: |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| vs. | |
| SUBARU OF AMERICA, INC., a New Jersey Corporation, and SUBARU CORPORATION, a Japanese Corporation, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

Plaintiffs Christina Taylor, Stuart Selis, Beth Cusimano, and Karl Greissinger

("Plaintiffs"), individually and on behalf of all others similarly situated, by and

through their attorneys, bring this action against Defendants Subaru of America,

Inc. and Subaru Corporation (collectively, "Subaru"). Plaintiffs allege the following

based on personal knowledge as to their own facts and upon information and belief and the investigation of counsel as to all other matters.

## INTRODUCTION

1.      Plaintiffs bring this action individually and on behalf of all current and former owners and lessees of the following model year ("MY") Subaru vehicles: MY 2021-2022 Outback, MY 2021-2024 Forester, MY 2021-2023 Legacy, MY 2021-2023 WRX, MY 2021-2022 Ascent, MY 2019-2023 Crosstrek, MY 2019-2024 Crosstrek Hybrid, MY 2022-2025 Forester Wilderness, and MY 2019-2023 Impreza (together, the "Class Vehicles").

2.      The Class Vehicles are equipped with a defective electrical system that fails to properly manage power consumption when the vehicle is turned off. Specifically, the vehicles contain a defect that prevents one or more electronic control modules from entering or maintaining a proper low-power 'sleep' state, resulting in excessive parasitic battery drain (the "Electrical System Sleep-State Defect" or "Defect"), causing the battery to fail prematurely and ultimately leaving consumers with a disabled vehicle.

3.      The Electrical System Sleep-State Defect manifests unexpectedly, requiring drivers to incur unforeseen expenses, including battery replacements, diagnostic costs, roadside service, and mobile battery jump packs. The Defect renders the Class Vehicles inoperable, impairs their core functionality, and poses a

safety hazard for drivers and their passengers who may be left stranded.

4.      Subaru has been aware of the Electrical System Sleep-State Defect since at least 2014, when it began issuing a series of technical service bulletins to its dealerships and service technicians relating to problems associated with the Defect in earlier model years of its vehicles. Subaru also knew of the Defect because large numbers of consumers complained about it, including when they brought their Class Vehicles to Subaru's authorized dealers for repairs. At least hundreds of drivers have reported a Class Vehicle experiencing an unexpected battery drain.

5.      Despite knowing of the Defect, Subaru has not successfully remedied it. The purported fixes provided through Subaru's service bulletins have been ineffective. As a result, Plaintiffs and Class Members have been forced to pay out of pocket for replacement batteries, jumper packs, and other repairs.

6.      While Subaru provides a three-year/36,000 mile warranty with each Class Vehicle and sells extended warranties of up to ten years, Subaru engages in a pattern and practice of avoiding its warranty obligations with respect to the Defect. When Plaintiffs and Class Members requested warranty service, Subaru representatives informed them that the battery was functioning normally and only needed to be recharged. On the few occasions when Subaru agreed to do more than recharge the battery, it simply replaced the battery without addressing the underlying cause of the parasitic battery drain due to the Defect. Replacement of the battery

with the same type battery was therefore ineffective, exposing Plaintiffs and other drivers to repeat failure.

7.    The Defect renders the Class Vehicles unsuitable for their intended purpose—transportation. The Defect is substantially certain to manifest in the Class Vehicles, and many Class Members have had a battery die more than once, leaving them stranded.

8.    Because of the concealed Defect, Plaintiffs and Class Members were deprived of the benefit of their bargains in purchasing their Class Vehicles. Plaintiffs accordingly seek relief both for themselves as well as for other owners or lessees of the Class Vehicles.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Subaru is headquartered and regularly transacts business in this district, is

subject to personal jurisdiction in this district and, therefore, is deemed to be a citizen of this district. Additionally, Subaru advertises in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this district.

11.    This Court has personal jurisdiction over Subaru because it is headquartered in this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within New Jersey and throughout the United States.

## PARTIES

### Plaintiff Christina Taylor

12.    Plaintiff Christina Taylor is a citizen and resident of New York. On or about November 20, 2021, she purchased a new 2021 Subaru Forester from Mid-Hudson Subaru, an authorized Subaru dealership located in Wappingers Falls, New York. Her vehicle bears VIN JF2SKADCXMH594523.

13.    Prior to purchasing her Forester, she viewed Subaru marketing materials concerning the Class Vehicle, including Subaru television commercials and online advertising, viewed the Monroney sticker on the vehicle, and spoke with Subaru sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives disclosed the Defect to Plaintiff

prior to or after the time of purchase.

14. On or about December 21, 2023, with approximately 36,705 miles on the odometer, the Defect manifested in Plaintiff's Class Vehicle. Plaintiff observed rough starts where the vehicle would be slow to start, instances where the vehicle shut off completely when the auto stop feature was engaged, and she needed to jump start her Forester on two occasions because the battery was dead. Plaintiff took her vehicle to Prestige Subaru, an authorized Subaru dealership located in Pleasantville, New York, and paid $326.96 for a replacement battery.

15. In or around February 16, 2026, with approximately 72,678 miles on the odometer, the replacement battery in her Forester failed. This time, Prestige Subaru covered the necessary battery replacement for her as a goodwill gesture.

16. Even after the replacement batteries, Plaintiff's vehicle continues to suffer from rough starts.

17. At all times, Plaintiff drove the vehicle in a foreseeable manner and in the manner in which it was intended to be used, including driving it daily for work.

18. Had Subaru disclosed the Defect to Plaintiff prior to purchase, including on the vehicle's Monroney sticker, she would not have purchased the Class Vehicle or would have paid less for it.

19. Plaintiff Taylor provided Defendants with notice of her claims by letter on April 27, 2026.

**Plaintiff Stuart Selis**

20.    Plaintiff Stuart Selis is a citizen and resident of New Jersey. On or about March 7, 2022, he purchased a new 2022 Subaru Forester from Freehold Subaru, an authorized Subaru dealership located in Freehold, New Jersey. His vehicle bears vehicle identification number ("VIN") JF2SKAPCXNH440830.

21.    Prior to purchasing his Forester, he viewed Subaru marketing materials concerning the Class Vehicle, including Subaru television commercials and online advertising, viewed the Monroney sticker on the vehicle, and spoke with Subaru sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives disclosed the Defect to Plaintiff prior to or after the time of purchase.

22.    In approximately December 2023, the Defect manifested in Plaintiff's vehicle. At the time, Plaintiff was picking up a friend at the airport and waiting in the cellphone waiting lot. When Plaintiff tried to start the vehicle, the battery was dead. Plaintiff had his vehicle towed to Freehold Subaru, which jumpstarted the car and told Plaintiff that the battery was fine. Plaintiff did not suspect there was any widespread defect with his vehicle at this time.

23.    In February of 2024, with approximately 55,000 miles on the odometer, the Defect manifested again in Plaintiff's Class Vehicle and he was unable to start his vehicle.

7

24. On or about February 22, 2024, Plaintiff brought the vehicle to Freehold Subaru to complain about the Defect. The dealership replaced the battery, for which Plaintiff paid $428.01 out of pocket.

25. At all times, Plaintiff drove the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

26. Had Subaru disclosed the Defect to Plaintiff prior to purchase, including on the vehicle's Monroney sticker, he would not have purchased the Class Vehicle or would have paid less for it.

27. On October 7, 2024, Plaintiff sold his Class Vehicle, prior to contacting the undersigned counsel.

28. Plaintiff Selis provided Defendants with notice of his claims by letter on April 27, 2026.

**Plaintiff Beth Cusimano**

29. Plaintiff Beth Cusimano is a citizen and resident of California. In October of 2021, she purchased a new 2021 Subaru Forester from Timmons Subaru, an authorized Subaru dealership located in Lakewood, California. Her vehicle bears VIN JF2SKASC8MH583314.

30. Prior to purchasing her Forester, she viewed Subaru marketing materials concerning the Class Vehicle, including online advertising, viewed the Monroney sticker on the vehicle, and spoke with Subaru sales representatives

concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives disclosed the Defect to Plaintiff prior to or after the time of purchase.

31.    On or about April 4, 2025, Plaintiff's Class Vehicle started to stall out and shut off. Plaintiff brought her Class Vehicle to Irvine Subaru located in Lake Forest, California, where the dealership diagnosed the Defect. Plaintiff was required to pay $340.18 out of pocket for a replacement battery.

32.    At all times, Plaintiff drove the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

33.    Had Subaru disclosed the Defect to Plaintiff prior to purchase, including on the vehicle's Monroney sticker, she would not have purchased the Class Vehicle or would have paid less for it.

34.    Plaintiff traded in her Class Vehicle on April 9, 2026, prior to contacting the undersigned counsel.

35.    Plaintiff Cusimano provided Defendants with notice of her claims by letter on April 27, 2026.

**Plaintiff Karl Greissinger**

36.    Plaintiff Karl Greissinger is a citizen and resident of Texas. On or about June 30, 2023, he purchased a new 2024 Subaru Outback from Gillman Subaru San Antonio, an authorized Subaru dealership located in San Antonio, Texas. His vehicle

bears VIN 4S4BTAPC5R3112547.

37. Prior to purchasing his Outback, he viewed Subaru marketing materials concerning the Class Vehicle, including Subaru television commercials and online advertising, viewed the Monroney sticker on the vehicle, and spoke with Subaru sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives disclosed the Defect to Plaintiff prior to or after the time of purchase.

38. On or about October 6, 2025, with approximately 51,178 miles on the odometer, the Defect manifested in Plaintiff's Class Vehicle. Plaintiff was operating the vehicle in Houston, Texas when the vehicle unexpectedly shut down, could not be restarted and blocked traffic. The vehicle was towed to Gillman Subaru Southwest, an authorized Subaru dealership located in Houston, Texas. A battery performance test and electrical system inspection was conducted on the vehicle. As a result, a new, larger Subaru battery was installed along with a different battery bracket and Plaintiff was required to pay $434.88.

39. At all times, Plaintiff drove the vehicle in a foreseeable manner and in the manner in which it was intended to be used, including driving it daily for work.

40. Had Subaru disclosed the Defect to Plaintiff prior to purchase, including on the vehicle's Monroney sticker, he would not have purchased the Class Vehicle or would have paid less for it.

41.     Plaintiff Greissinger provided Defendants with notice of his claims by letter on April 27, 2026.

**<u>Defendants</u>**

42.     Defendant Subaru Corporation (formerly known as Fuji Heavy Industries, Ltd.) is a Japanese corporation with its principal place of business in Tokyo, Japan. Subaru Corporation is engaged in the business of designing, manufacturing, warranting, marketing, advertising, selling, and servicing Subaru vehicles around the world, including through a network of more than 600 dealerships in the United States.

43.     Defendant Subaru of America, Inc. is a New Jersey corporation with its principal place of business in Camden, New Jersey. Subaru of America operates as a wholly-owned U.S. sales and marketing subsidiary of Defendant Subaru Corporation. It distributes, advertises, markets, sells, warrants and services Subaru vehicles in the United States.

44.     The design, manufacture, distribution, service, repair, modification, and installation of the batteries, electrical systems, and other components within the Class Vehicles were controlled exclusively by Subaru Corporation, Subaru of America, and their agents and affiliates.

45.     There exists, and at all relevant times existed, a unity of ownership between Subaru Corporation, Subaru of America, and their agents such that any

individuality or separateness between them has ceased and each of them is the alter ego of the others.

46.    Subaru of America communicates with Subaru Corporation concerning virtually all aspects of the Subaru products that Subaru of America distributes, sells, warrants and services within the United States, including appropriate repairs for defects and whether Subaru will repair defective parts and assemblies.

47.    Subaru Corporation and Subaru of America jointly develop sales and marketing materials, advertisements, owner's manuals, warranty booklets, and maintenance recommendations and schedules for the Class Vehicles, as well as Technical Service Bulletins that Subaru issues to authorized dealerships in order to address known defects.

48.    Subaru Corporation and Subaru of America also jointly design, determine the substance of, and affix to Subaru vehicles the window stickers visible on every new Subaru vehicle offered for sale at their authorized dealerships. Subaru controls the content of these "Monroney" stickers—its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Subaru are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. § 1231 *et seq.*, which, among other things, prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car,

including the dealership at which the vehicle is offered for sale.

## FACTUAL ALLEGATIONS

### A.    The Electrical System Sleep-State Defect

49.   People depend on their vehicles to provide reliable and safe transportation. The battery is an essential component of any vehicle: it powers the electrical system within the vehicle and also provides the electrical energy needed to start the vehicle's engine. Without a functional battery, the Class Vehicles cannot be used for transportation.

50.   The Class Vehicles suffer from a Defect that prematurely renders them inoperable. The electrical systems within the Class Vehicle are subject to a continuous parasitic drain—including when the engine is not running—thereby resulting in premature battery failure under ordinary and expected use.

51.   Modern Subaru vehicles rely on a network of interconnected electronic control units ("ECUs"), including but not limited to telematics modules, body control modules, and other components, which communicate over a Controller Area Network ("CAN bus") system. When functioning properly, these systems transition into a quiescent state after the vehicle is shut off, thereby minimizing current draw from the battery.

52.   In the Class Vehicles, however, one or more components remain active or repeatedly "wake" after shutdown, preventing the vehicle from entering a stable

13

low-power state. This results in continuous or intermittent electrical draw—commonly referred to as "parasitic drain" or "dark current draw"—which depletes the battery even when the vehicle is not in use.

53.    The Class Vehicles utilize a Controller Area Network ("CAN"), designed to let components like electronic units, microcontrollers, devices, sensors and actuators communicate and work together.[1] Thus, pressing the gas pedal, opening the windows, and switching on the lights is not only a mechanical function but also an electrical activity in which an electrical signal is sent over the CAN.

54.    The CAN system allows ECUs to communicate with each other without complex dedicated wiring in between. In turn, this allows for many features, modifications and repairs to be accomplished via software alone.

55.    Subaru began to implement CAN technology in the early 2000s.[2] After first appearing on the 2005 Legacy, CAN has been implemented in all Subaru models. Starting with the 2015 Legacy and Outback, Subaru vehicles were shipped with a new high-speed CAN configuration.[3]

56.    The high-speed CAN in all Class Vehicles is substantially similar and/or closely related. The CAN in the Class Vehicles is made up of two wires, which

---

[1] https://static.nhtsa.gov/odi/tsbs/2013/MC-10234868-9999.pdf (last visited May 1, 2026)

[2] *Id.*

[3] https://static.nhtsa.gov/odi/tsbs/2014/MC-10234869-9999.pdf, at 50 (last visited May 1, 2026).

connect all the devices in the network. Each control module has both a transmitter and a receiver, enabling it to receive data from and transmit data to other modules and subsystems at 500 kilobytes per second.[4]

57.    The CAN system in the Class Vehicles is divided into two separate high-speed circuits, the main CAN and the body CAN.[5] According to Subaru, critical systems such as the engine, transmission and ABS are controlled through the main CAN. Less critical electrical systems like power windows, turn signals and HVAC are controlled through the body CAN. The main and body CANs are connected through a gateway, which Subaru calls a Body Integrated Unit ("BIU").

58.    The BIU is responsible for controlling many systems, including (but not limited to) lighting, instrument panels, door locks, windshield wipers, HVAC and power windows. The BIU is separate from the Engine Control Module ("ECM"), Transmission Control Module ("TCM") and Data Communications Module ("DCM") but communicates with these modules through the CAN system.

59.    When the vehicle is in use, the CAN system in the Class Vehicles relies on electrical current so that the vehicle can be operated as intended. When the vehicle is not being operated, the CAN system should enter a sleep mode in which it stops drawing significant electrical current.

---

[4] *Id.* at 10.
[5] *Id.* at 8.

60.    The Defect manifests through multiple, interrelated failure modes within Subaru's electrical architecture. In earlier model years, the Defect was primarily associated with improper CAN bus communication, whereby modules failed to transition to sleep mode due to persistent network activity. In the Class Vehicles, the improper CAN bus communication also occurs.

61.    In newer model years, including certain of the Class Vehicles, the Defect also manifests through the Data Communication Module ("DCM"), a telematics component responsible for external network connectivity, including Subaru's STARLINK system, which also fails to transition to sleep mode due to persistent network activity.

62.    In these vehicles, the DCM is also prone to malfunction, including but not limited to: (1) repeated attempts to establish or maintain network connections; (2) failure to recognize or adapt to unavailable cellular networks; (3) internal software or memory errors causing persistent operation; and (4) failure to enter a low-power or sleep state after vehicle shutdown.

63.    As a result of these conditions, the DCM continues to draw power from the vehicle's battery even when the vehicle is turned off, contributing to or directly causing excessive parasitic drain by failing to properly enter sleep mode.

64.    These failure modes are not isolated or unrelated issues, but rather different manifestations of the same underlying defect: Subaru's failure to design

16

and implement an electrical system capable of reliably transitioning to and maintaining a low-power state across its networked components.

65.    The Class Vehicles contain a manufacturing defect (including software errors) that results in the electrical system (the CAN and DCM) not entering the necessary sleep mode when the vehicle is turned off. As a result, the electrical system draws significant "dark current" (parasitic battery draw) even when the vehicle is turned off and not being operated.

66.    The presence of dark current when the Class Vehicles are turned off prematurely renders them inoperable. The battery in each Class Vehicle is subject to continuous parasitic drain—including when the engine is not running—thereby resulting in premature battery failure under ordinary use.

67.    As detailed below, Subaru knew about the Defect, its underlying cause, and the symptoms associated with it since at least 2014, before any Class Vehicles were sold.

### B.    The Defect Poses a Safety Hazard

68.    When the Defect manifests and the battery fails, the electrical components lose power, the engine in the Class Vehicle will not start, and the vehicle becomes completely inoperable. As a result, drivers become stranded and must seek roadside assistance or alternative means of transportation.

69.    Moreover, the loss of battery power also renders many safety features in

the vehicle inoperable, including hazard lights and headlights, increasing the danger of a disabled vehicle being struck by another vehicle and making it harder for roadside assistance to locate the disabled vehicle.

70. Given the serious and varied dangers from being left stranded with a dead battery and vehicle electrical failure, the Defect presents a clear safety hazard. Drivers may become stranded in locations where there is no immediate available assistance or in inclement weather. Children and pets also may become locked inside a vehicle that cannot be opened without battery power.

### C. Subaru's Deficient Warranty Performance

71. Subaru provides a three-year/36,000 mile New Vehicle Limited Warranty ("New Vehicle Limited Warranty") for the Class Vehicles. With limited exclusions, the New Vehicle Limited Warranty covers the entire vehicle—including the electric system and battery—as well as "any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use." The repairs are to be made without charge to the customer and within a "reasonable time."

72. Subaru also provides an "Authorized Genuine Subaru Replacement Battery Warranty" which states:

> Authorized Genuine Subaru Replacement Batteries are warranted by the 30-month/unlimited mileage Authorized Genuine Subaru Replacement Battery Warranty or the balance of the Basic New Vehicle Limited Warranty, whichever is longer. During the 30-month Authorized Genuine Subaru

Replacement Battery Warranty period, or the balance of the Basic New Vehicle Limited Warranty period, coverage includes reimbursement for testing and replacement labor costs provided the battery was installed by an authorized Subaru retailer. In addition, if the vehicle cannot be driven due to a defect covered by this warranty, the cost of towing to the nearest authorized Subaru retailer is covered. Authorized Genuine Subaru Replacement Batteries that fail after the 30-month Authorized Genuine Subaru Replacement Battery Warranty period or the Basic New Vehicle Limited Warranty has expired are eligible for prorated warranty coverage for a limited period of 85 months. Reimbursement for testing, replacement labor or towing is not covered. Prorating begins on the date the battery was originally installed.[6]

73.    Subaru also sells extended warranties such as the "Classic Plan" or "Gold Plus Coverage" plans extending warranty coverage for up to 10-years/120,000 miles, depending on the plan.[7] These plans cover repairs to the Class Vehicle's electrical systems.

74.    The Defect arises from defective materials and/or workmanship in the Class Vehicles' electrical systems and is therefore covered under Subaru's warranties. Yet Subaru has refused to fix the Defect. Instead, when owners and lessees take their Class Vehicles into Subaru dealerships for service, they are told that the batteries in their vehicles are performing normally and instructed to avoid driving Class Vehicles for short distances. At most, Subaru instructs the dealerships to replace the batteries in the Class Vehicles. But since Subaru replaces the batteries

---

[6] https://subaruparts.worldoemparts.com/subaru-parts-and-accessories-warranty (last visited May 1, 2026).
[7] https://www.subaru.com/content/dam/subaru/en/pages/owners/benefits-of-ownership/2025_0130_S_25EZ_ViewGuide_EBro_rX_63_.pdf (last visited May 1, 2026).

with the same type batteries, or performs ineffective software updates, without addressing the underlying cause of the parasitic battery drain, the Defect inevitably manifests again. Absent a repair to the vehicle that resolves the parasitic draw of the electrical system, drivers whose battery is replaced with the same type battery or whose software is updated will experience the Defect again. Thus, Subaru's warranties provide only a temporary, ineffective solution, and expose their customers to repeat failure.

75. As reflected in Plaintiffs' experiences with their original and replacement batteries and the nature of the Defect, Plaintiffs are likely to suffer more battery failures, which will not be covered by their Subaru New Vehicle Limited Warranty once it expires.

76. The Defect impacts the core functionality of the Class Vehicles—when it manifests, the Defect prevents consumers from operating their automobiles and using them for reliable transportation. Subaru's refusal to honor its warranty obligations shifts the costs of the Defect onto its customers, who must resort to purchasing larger capacity batteries or battery chargers in order to have a vehicle that will function properly and consistently.

**D.    Subaru's Exclusive Knowledge of the Defect**

77. Subaru had exclusive and superior knowledge of the Defect before Plaintiffs purchased their Class Vehicles through a variety of sources unavailable to

consumers, including internal pre-release testing data, consumer complaints to Subaru and its dealers, Subaru's testing in response to the complaints and in connection with service bulletins, warranty data from its dealers, replacement parts sales data from its internal databases, and reimbursement claims paid to Subaru dealers for work performed in response to warranty claims.

78.    For decades, Subaru has used a Product Quality Management System for developing, manufacturing, and distributing its products. During the design and development and production stages, Subaru conducts extensive testing and quality inspection of all the critical components of a vehicle—including the electrical systems and battery—to uncover defects and variations in manufacture.

79.    The distribution and sales stage of Subaru's quality management system begins when the vehicles are shipped to dealers. Subaru then collects and analyzes sales data from its dealership network and Customer Center for possible defects. Subaru therefore has exclusive access to data on how its vehicles are performing or not performing after they are sold.

80.    Subaru's Quality Assurance Division works closely with authorized service technicians to detect and examine potentially widespread vehicle problems and to assist dealerships in diagnosing vehicle issues. The division collects and analyzes data from dealership service centers, parts sales reports, warranty claim data, and technical reports from Subaru engineers who examine vehicles brought in

21

for warranty repairs. Subaru tests the batteries in particular, using specialized Subaru-specific equipment including electrical diagnostic platforms.

81.    Subaru's dealership service centers are required to provide Subaru with detailed documentation—e.g., the actual parts that were replaced—for repairs made pursuant to its warranties, and Subaru sometimes audits dealerships to verify that the work was completed. Subaru's warranty department reviews warranty data submitted by its dealership service centers and authorized technicians in order to identify trends in warranty repairs and customer complaints, as well as potential vehicle defects.

82.    Subaru service centers and independent repair shops order replacement parts, including batteries, directly from Subaru. Subaru monitors sales reports for these replacement parts and consequently has real-time information about the number, frequency, and trends of replacement part orders.

83.    Subaru's knowledge of the Defect in the Class Vehicles is demonstrated by a series of Technical Service Bulletins ("TSB") it began issuing in 2014 to address problems with parasitic battery draw and other battery performance issues in its vehicles. TSBs are typically issued when there have been a sufficient number of consumer complaints for a manufacturer to justify devoting resources to investigate, diagnose, and attempt to remedy a reported problem in its vehicles. It takes at least several months for a manufacturer to investigate, source and issue a

22

TSB.

84.    In June 2014, Subaru issued TSB, Number 07-85-14 for "Parasitic Battery Draw" in response to "[c]ustomer concerns of batteries going dead over a period of time . . . ."[8] This TSB applied to "All Models" and directs service technicians to measure the current draw and determine if a vehicle was "exhibiting an unusual current draw."

85.    In February 2015, Subaru released another TSB, Number 07-89-15R for 2015 Legacy and Outback models to address reports that the vehicles would not start or that the vehicles' instrument panels and HVAC systems would become inoperative—common symptoms of the Defect. The TSB tells technicians to replace the fuse box.[9] The TSB was later amended to include 2016 Legacy and Outback vehicles.

86.    In February 2016, Subaru issued a TSB, Number 07-106-16R directing its dealerships to replace the battery sensor in 2015 through 2016 Legacy, Outback, and WRX models.[10]

87.    In June 2017 (and revised in June, August, and October 2017), Subaru

---

[8] https://static.nhtsa.gov/odi/tsbs/2014/SB-10068295-0699.pdf (last visited May 1, 2026).

[9] https://static.nhtsa.gov/odi/tsbs/2016/SB-10081068-0699.pdf (last visited May 1, 2026).

[10] https://static.oemdtc.com/TSB/MC-10192925-9999.pdf (last visited May 1, 2026).

issued another TSB, Number 11-174-17R, covering 2015 to 2017 model year Legacy, Outback, and WRX models, as well as 2017-2018 Forester models.[11] This TSB was intended to address customer concerns about "[p]otential battery discharge (dead battery) after repeated periods of short-trip driving" by reprogramming the vehicle's engine control module ("ECM") with "New Charging Logic."

88.    In June 2017, Subaru also issued a separate TSB, Number 11-175-17, making ECM reprogramming available for the 2017 Forester for "[p]otential battery discharge (dead battery) after repeated periods of short-trip driving."

89.    In November 2017, Subaru released yet another TSB, Number 11-176-17, covering 2015 to 2016 model year Legacy and Outback models, for "Reprogramming to Optimize ECM for Improved Battery Life."[12] The TSB tells dealerships to reprogram the ECM to "optimize . . . control of battery charging functions" in order to "enhance charging system control and result in improved battery life."

90.    In October 2019, Subaru issued TSB, Number 11-192-19, for 2019 and 2020 Ascent models to reprogram the ECM to "address isolated concerns of extended cranking (hard starting) condition," another common symptom of the

---

[11] https://static.nhtsa.gov/odi/tsbs/2017/MC-10131689-9999.pdf (last visited May 1, 2026).
[12] https://static.nhtsa.gov/odi/tsbs/2017/MC-10125883-9999.pdf (last visited May 1, 2026).

Defect.[13]

91.    In November 2022 and April 2023, Subaru issued TSB, Number 15-308-23.[14] This Service Information Bulletin announces important diagnostic information to utilize when the Data Communication Module ("DCM") is being tested as a dark current/standby current source. According to the TSB, the DCM is constantly searching for a network to attach to when it first starts or is in an area of poor coverage. The low signal will cause the DCM to always be awake and seeking a network connection for up to 14 days until the DCM hibernates. An excessive amount of current drain on the battery will cause it to discharge and may lead to a no-start condition.

92.    In October 2025, Subaru issued TSB, Number 15-308-23R, for "All I.C.E. Models" to outline a systematic procedure for diagnosing parasitic draw (draw/standby current) in vehicles experiencing battery drain when the ignition is off, leading to no-start conditions or frequent jump-starts.[15]

93.    Subaru has specifically acknowledged the DCM can cause excessive parasitic battery drain, including where the module continues attempting to communicate with unavailable cellular networks or experiences internal failures that

---

[13] https://static.nhtsa.gov/odi/tsbs/2019/MC-10166949-0001.pdf (last visited May 1, 2026).
[14] https://static.nhtsa.gov/odi/tsbs/2023/MC-10235315-0001.pdf (last visited May 1, 2026).
[15] https://oemdtc.com/tsb/11024869/ (last visited May 1, 2026).

25

result in continuous operation.

94. In response to these known issues, Subaru previously issued warranty extensions for earlier models covering the DCM for up to eight (8) years or 100,000 to 150,000 miles, for MY 2016-2018 Crosstek, MY 2016-2018 Forester, MY 2016-2018 Impreza, MY 2016-2019 Legacy, MY 2016-2019 Outback, MY 2017-2021 WRX and has authorized repairs including reprogramming, bypassing, or replacement of the DCM, as well as battery replacement where excessive current draw is confirmed.[16] Subaru has not done the same for the Class Vehicles.

95. Subaru has also developed and deployed interim measures, including "bypass" devices designed to disable or circumvent the DCM, further evidencing that the root cause of the battery drain lies in the design, manufacturing and operation of the electrical system rather than in normal battery wear or consumer usage.

96. Even when Subaru performs DCM-related repairs, including reprogramming or replacement, such measures do not consistently resolve the Defect, as the underlying issue—failure of the vehicle's electrical system to properly manage low-power states—persists.

97. As a result, owners and lessees of Class Vehicles continue to experience repeated battery failures, requiring multiple battery replacements, jump-starts, and

---

[16] https://static.nhtsa.gov/odi/tsbs/2024/MC-10252465-0001.pdf (last visited May 1, 2026); https://static.nhtsa.gov/odi/tsbs/2024/MC-10251111-0001.pdf (last visited May 1, 2026).

service visits.

98.   Despite this knowledge, Subaru has failed to disclose the Defect to consumers at the time of purchase or lease and has continued to market and sell vehicles equipped with the defective electrical system.

99.   Given that TSBs are only issued after a significant number of complaints that are generally investigated over a period of months, Subaru was aware of the Defect and the parasitic battery draw issues in its vehicles well before June 2014.

100.   As Plaintiffs' experiences show, Subaru's bulletins and purported "fixes" did not address the underlying cause of the parasitic battery drain and have repeatedly proven ineffective. The internet is also replete with driver complaints on message boards, social media, and other websites concerning the Defect.

101.   Numerous complaints about the Defect appear on websites Subaru actively monitors, such as the website for the National Highway Traffic Safety Administration ("NHTSA") and Subaru's owner message boards. Automobile manufacturers are required by law to monitor NHTSA complaints and report any potential safety defects to the United States government. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

102.   Many of the related complaints posted on social media websites such as Facebook and Twitter also tag Subaru in the posts. Although Subaru monitors these forums, it is difficult for consumers with limited resources to do so. The following

are a representative sampling of the complaints submitted by Class Vehicle owners, organized by model:[17]

## **OUTBACK**

**NHTSA ID Number**: 11414938
**Complaint Date**: May 3, 2021
**Incident Date**: May 3, 2021
**Summary of Complaint**
AFTER 5000 MILES MY BATTERY HAS BEEN DRAINED AND IS CURRENTLY DEAD. I WAS TOLD I MUST LOCK IT EVERY TIME I AM NOT DRIVING TO ENSURE BATTERY LIFE IS EXTENDED. EVEN WITH DOING THIS BATTERY IS STILL DEAD AFTER BARELY 5000 MILES.

**NHTSA ID Number:** 11419325
**Complaint Date:** June 2, 2021
**Incident Date:** May 27, 2021
**Summary of Complaint**
The contact owns a 2021 Subaru Outback. The contact stated that the battery had fully drained and was recharged two times. There was no warning light illuminated. The third time the vehicle was towed to an unknown mechanic and was diagnosed with needing the battery to be replaced. The vehicle was repaired. Subaru was informed of the failure. The failure mileage was approximately 832.

**NHTSA ID Number:** 11420661
**Complaint Date:** June 12, 2021
**Incident Date:** June 8, 2021
**Summary of Complaint**
My Subaru battery was completely dead after only having it for 3 months and 700 miles on odometer. I was left stranded due to not being able to start vehicle. Vehicle was towed to dealer. Dealer took 2 day to diagnose that the battery was bad and they replaced battery. Dealer claims the passenger map light was left on. This light was not left on unless the tow truck driver left the light on. It was night time when the vehicle was towed and when the vehicle was jump started the light was not on.

**NHTSA ID Number:** 11425476

---

[17] The following complaints are reproduced as they appear online. Any typographical errors are attributable to the original author.

**Complaint Date**: July 19, 2021
**Incident Date:** May 18, 2021
**Summary of Complaint**

I purchased this vehicle in May 2021 and since then have had four incidents where the battery was not able to start the vehicle. The first two incidents were when I was camping, so there was some heavy, battery only electrical system use, e.g. opening/closing the hatchback, turning on lights, etc.

**NHTSA ID Number:** 11427187
**Complaint Date:** July 30, 2021
**Incident Date:** July 30, 2021
**Summary of Complaint**

Problem has occurred twice when I put my cellphone in the same pocket as my key fob. The car will not start when I press the start button, although the ignition will be on and the dashboard instruments light up. Even if I separate the fob from the phone, it won't start. Holding the keyfob right up to the start button won't allow it to start. The battery in the fob is brand new. On this car, only the fob can start the car. I have had to use the MySubaru app via Starlink (a subscription service) to remote start the car using my cellphone. However, I cannot shift it into gear. I must turn the car off, and then restart the car by pushing the button. It will then start normally. If I did not subscribe to Starlink, I would have been able to start the car at all. The phone/fob proximity problem seems to create a logic fault in the vehicle programming which then prevents you from starting the car using the fob, even if you separate it from the phone.

**NHTSA ID Number:** 11427874
**Complaint Date**: August 5, 2021
**Incident Date:** July 29, 2021
**Summary of Complaint**

Bought my 2021 outback June 16th. Last week my battery went dead in my driveway. Called customer care and they had to jump me. Yesterday morning it was dead in the driveway again. Again they had to come out and jump me. July 29th was the first time and august 4th was the second time. This is a brand new car!

**NHTSA ID Number:** 11428833
**Complaint Date:** August 12, 2021
**Incident Date:** August 9, 2021
**Summary of Complaint**

Record of Subaru Outback electrical issues 2021 April 25 purchased. May 5 ca.No startSalesman came to home and jump started. June 28-29No start, Recharged and

had no further electrical issues until--- July 27No start. Briefly left vehicle. On return wouldn't start, dash lights crazy blinking.Jump box started it. July 28 Left it all morning at Subaru service for eval; result: "no problems were detected." Aug.5No start. Parked at friends for 3 hr. On return wouldn't start, dash lights crazy blinking. Jump box restart. Aug. 7No start. Left ignition on for 3 hr testing new solar panel.Purchase Solar panel, proves useless, ignition drained battery.Trickle charged for several hours, starts. Aug. 9 No start. Battery dead. Trickle charged for several hours, starts. Conclusion: Subaru Outbacks are: (1) inherently unreliable, (2) Subaru has known about this problem for several years, and (3) Subaru is dishonest in not admitting to and fixing the problem.

**NHTSA ID Number:** 11431279
**Complaint Date:** August 31, 2021
**Incident Date:** August 31, 2021
**Summary of Complaint**
Drove car and parked for 15 minutes. When I tried to start it again it would not turn over. Battery was completely dead and could not be jump started. Car is a 2021 model with only 11K miles on it. There was no prior warning of a low battery. It left me stuck in an isolated parking lot. Probably not a major safety issue but apparently a known issue for late model Subaru Outback's so I wanted to add the 2021 model to the affected list.

**NHTSA ID Number:** 11431607
**Complaint Date:** September 3, 2021
**Incident Date:** September 3, 2021
**Summary of Complaint**
Battery drain and car won't start. Called roadside service for a Jumpstart and on 5 other occasions, even after driving for 1.5 hours, the car won't start. Sometimes after driving and turning car off for 1/2 hour to visit a store, it won't start. Othertimes it will. Car only has 6000 miles on it. I have had to buy a battery jump starter so I can at least get rolling again. I have a call into Subaru service but they could not get me in for over a week. So I have to deal with the possibility of being stranded until Subaru can diagnose. I live in the country so bring stranded will be a big deal. I should have bought the Volvo.

**NHTSA ID Number:** 11431959
**Complaint Date:** September 7, 2021
**Incident Date:** September 6, 2021
**Summary of Complaint**
I am having battery drainage issue with my vehicle. If it sets more than 4 days the

car will not start. I see there is a class action law suit on Outback vehicles. This car has 9,000 miles on it and this has happened 3 times.

**NHTSA ID Number:** 11432345
**Complaint Date:** September 9, 2021
**Incident Date:** September 9, 2021
**Summary of Complaint**
Bought a new 2021 Subaru Outback in July 2021. In the first 1600 miles of driving the battery has died three times. Twice I found it wouldn't start after having parked it for a few days and once it wouldn't start the next day after driving it (it was driven the previous day at 6pm and wouldn't start at 9am the next day). There seems to be something that drains the battery when the vehicle is off. One time it may have been my fault for leaving an interior light on, but how could an interior light drain the battery in just a few hours? I've had roadside assistance jump start the car each time it wouldn't start and each time the technician said anecdotally that Subaru Outbacks and Foresters were the most common car he is seeing get jumped. That last time it wouldn't start, I double checked to make sure I had not left any interior lights on and I had not. This is definitely an issue with the car - some system draining the battery.

**NHTSA ID Number:** 11433407
**Complaint Date:** September 17, 2021
**Incident Date:** September 16, 2021
**Summary of Complaint**
Bought this new Subaru in December and the battery died twice after a week and a half of not driving. The first time I had to get the battery replaced. If I don't start the car every few days (and during COVID I don't) then the electricity completely drains the battery dead.

**NHTSA ID Number:** 11436737
**Complaint Date:** October 14, 2021
**Incident Date:** June 26, 2021
**Summary of Complaint**
Your form would not allow me to chcek all applicable issues. I believe the computer system and brakes are the major issues. The start/stop system engaged when I was turning in the middle of an intersection. When driving at cruising speeds (foot on the gas pedal), the car suddenly felt as if the brake was being engaged. The forward and rear collision warning signals do not work. The blind spot warning does not work. There is grinding coming from the undercarriage at times (random), while my foot is on the gas. The car bucks for no reason. The battery is draining (less than 2,000 miles on the car). Sometimes I have to turn the ignition twice in the morning. I turn

31

everything off when I get out of the car. My safety and safety of others is definitely at risk. What I didn't realize until recently is that prior to accepting the vehicle, the salesman must have turned the start/system off, because when I went for a test drive, the start/stop did not engage once and I drove in city traffic with multiple stops. Immediately upon diving off lot, the car stopped and I had issues. The salesman told me I had to get used to the start/sytem. This is a dangerous situation. My car is currently being looked at by the dealer.

**NHTSA ID Number:** 11443172
**Complaint Date:** December 8, 2021
**Incident Date:** November 28, 2021
**Summary of Complaint**
Car is suffering from "Parasitic Drain". Car is brand new with only a little over 200miles on it. Dealer has had to tow in the car twice already. Battery has been replaced. Car has so far been DOA 3 times in Driveway with a weeks' time.

**NHTSA ID Number:** 11443722
**Complaint Date:** December 14, 2021
**Incident Date:** December 14, 2021
**Summary of Complaint**
Battery dead after leaving in garage for a day. Happened three times and I brought it to dealer, and they charged battery and said it passed Subaru test procedure and that nothing they can do. No lights on and key is in house closet area. Battery still drains if left in garage for a day without driving. I bought a portable charger for $150.

**NHTSA ID Number:** 11444463
**Complaint Date:** December 20, 2021
**Incident Date:** December 20, 2021
**Summary of Complaint**
Car won't start. Battery drained after in garage overnight. The lights weren't left on and keys far from car. This same thing happened after leaving car with blinkers on for a very short period.

**NHTSA ID Number:** 11445989
**Complaint Date**: January 3, 2022
**Incident Date:** January 2, 2022
**Summary of Complaint**
After 2 week of new car ownership--battery dead. Only 359 miles on the car

**NHTSA ID Number:** 11453302
**Complaint Date:** February 21, 2022
**Incident Date:** January 25, 2021
**Summary of Complaint**
The battery does not hold a charge. I have had to have AAA charge my battery on 10 occasions in the fourteen months since I purchased this vehicle. I also have had to have the battery jumped by friends to start the car. The battery was replaced by the dealership in early September 2021, claiming it was a deflected battery and I should have no more battery problems. The replaced battery has not held a charge either. There is no warning, just a dead battery. i have been informed by Subaru that the cause of a dead battery is because the car is not driven every day. I am retired and have no need to drive every day. However, when I have been able to start the car and use it frequently the battery still dies. The car is not safe to drive when the battery is unreliable.

**NHTSA ID Number:** 11453807
**Complaint Date:** February 24, 2022
**Incident Date:** February 22, 2022
**Summary of Complaint**
Battery completely died on a nearly brand new car overnight, after being parked for less than 48h at temperatures around 5°F. Took it to a dealer who claims that the LED dome light was left on, draining the battery. However, the dome light is an LED light rated at about 100mA @ 13V, and the battery is rated over 100 Amp-hours (de-rated to 45% at ~0°F, so a single dome light by itself should take around ~450 hours to drain a fully-charged battery. It seems like even brand new Subaru Outback 2022s are affected by major parasitic drain battery issues.

**NHTSA ID Number:** 11456087
**Complaint Date:** March 10, 2022
**Incident Date:** March 9, 2022
**Summary of Complaint**
We have a Brand New 2022 Subaru Outback premium We parked it in our indoor garage for 1 week. We left no lights on, etc. We came back and could not start the car. The dashboard lit up, a lot of flashing icons, the radio and lights came on. We called service they charged battery fully, we drove car for over an hour. Parked in garage. Today, next morning, same thing Had it towed to local dealer. They said would replace battery, no charge (of course) I checked on line and saw an article about this issue affecting Many Subaru owners, that Subaru is well aware, and has not solved the issue. So people have to replace battery fairly often. I can not rely on this car. I am going to join the Class Action Lawsuit now.

**NHTSA ID Number:** 11464789
**Complaint Date:** May 16, 2022
**Incident Date:** May 5, 2022
**Summary of Complaint**

vehicle about 14 months old, I purchased new Tried to start vehicle battery dead, no lights or other acc. had been left on. two weeks later battery would not start car, I jump started car according to directions in owners manual. After jump start several check engine lights came on, cruise control did not work. lane control and "EYESIGHT" failure warning light was on. Subaru dealer replaced battery under warranty

**NHTSA ID Number:** 11473993
**Complaint Date:** July 14, 2022
**Incident Date:** July 14, 2022
**Summary of Complaint**

Battery is draining for no apparent reason. As stated in several class action law suits, defects in these vehicles ( Subaru Outback 2015-2020) cause the batteries to drain, replacement batteries also drain. The Subaru Outback battery drains because of the Controller area network (CAN). When the vehicle is shut off, the CAN system should enter sleep mode so only a limited amount of electrical current is used. However, Subaru software errors prevent the CAN from entering sleep mode when vehicle is turned off. This software error will drain the original battery and every replacement battery installed in an Outback. Once the battery is drained, I am stranded. Reference law suits Daley v. Subaru and Tomasian v. Subaru. Subaru needs to fix all Subarus that are affected by this battery drainage issue. I have been experiencing this problem since we bought the car. First time, I thought I left something on, subsequent drainage issues I know that nothing has been left on. I now keep a trickle charge unit on the battery while in the garage at all times.

**NHTSA ID Number:** 11476086
**Complaint Date:** July 27, 2022
**Incident Date:** May 10, 2022
**Summary of Complaint**

Vehicle was about 1 year old and had about 2300 miles when I started having issues with the battery being dead and having to jump start the vehicle after it sat a few days. I contacted the dealership and the battery took it in. After about 4 hours they said the battery was "low" and they recharged it and said everything was fine. They said I didn't drive it enough so it was my fault the battery would not start the vehicle. That was 5/10/22. On 8/26/22 the battery was dead and I had to jump it again. There have been no warning lights.

34

**NHTSA ID Number:** 11476827
**Complaint Date:** August 1, 2022
**Incident Date:** July 26, 2022
**Summary of Complaint**

Battery dies or runs so low the vehicle won't start, if a door/hatchback is left open just a short time with the engine turned off. Or if the key fob is in the cab more than a few minutes with the engine off, or the accessory function is used more than a few minutes with the engine off. I bought the car on July 21st 2022. On July 26st 2022 I was driving it on a Jeep road and pulled over and stopped for 10-15 minutes, car/engine turned off. When I returned the car wouldn't start. I tried to start it repeatedly. It appeared to be a low battery. I may have left the door ajar but don't believe so. I did sit in the car a few minutes with the engine off. My phone was plugged in to the car and I used it for a few minutes. I possibly could have left the key fob in the car but don't think so. About 15 minutes later, after exiting the vehicle, I got back in and it started. I researched online and found this has been a problem with Subaru Outbacks. Lawsuits have been filed. I called the dealership and talked to the salesman and he said he had no idea why my car hadn't started. Which I find hard to believe. If this had happened a few miles further out in the desert and I was gone from the car longer and the battery completely failed it would have been a life threatening situation. It was a 100 degree day and phone reception was spotty. I'm 67 and had water but a 6 mile walk back to civilization wouldn't have been easy. I've read that many Outback owners carry a jump-start device-battery. I'll get one, they're cheap. But still the dealerships and Subaru should inform/warn customers of this issue BEFORE they buy or leave the premises. I wouldn't have bought the car if I knew. Subaru's are marketed as outdoor friendly and this model, the Wilderness, supposedly designed just fit that. How many people are being stranded in dangerous situations? Leaving the hatchback open while camping as they unload the car engine off-dead battery. I've heardrumors online of a software fix

**NHTSA ID Number:** 11477590
**Complaint Date:** August 4, 2022
**Incident Date:** August 1, 2022
**Summary of Complaint**

Battery drained, car would not start. First occurrence with new car at 831 miles, battery diagnosed as defective and replaced by manufacturer. Second occurrence at 4620 miles after sitting unused 8 days at airport parking, battery drained and most "check engine" lights on after jump-starting. EyeSight and most safety features disabled until checked and reset by manufacturer. Manufacturer quote "CAUSE: Problem due to vehicle sitting for more than a week low battery voltage concern.

35

Recharged battery and it passes test. 100009 No problem found." Maintenance rep said car is working to specs. However a periodic dead battery to seniors who do not drive daily but desperately need a reliable car in case of sudden emergencies is cause for a safety concern.

**NHTSA ID Number:** 11480332
**Complaint Date:** August 20, 2022
**Incident Date:** August 20, 2022
**Summary of Complaint**
Battery has died 3x in 7500miles of driving Subaru states battery is fine.

**NHTSA ID Number:** 11481217
**Complaint Date**: August 25, 2022
**Incident Date:** August 21, 2022
**Summary of Complaint**
The car was not used for two weeks (parked at home garage). When we came back from our trip, the battery died. Everything (lights etc.) had been turned off. The tow service came to jump started my car, and I drove to the dealership. I took it to the dealership, they inspected the car, recharged the battery, sent me home. The service person suggested I put in a battery tender to keep car outback charged while being away for a while. The car was purchased in late May 2022. If we had driven the car to park at airport while we were on vacation, we would have been stranded at the parking lot. A safety hazard! Apparently the dead battery issue with Subaru Outback is an known issue.

**NHTSA ID Number:** 11483113
**Complaint Date:** September 6, 2022
**Incident Date:** September 6, 2022
**Summary of Complaint**
Wind shield very very weak cracks very easy I have had for 1.5 years, I am on my 6th windshield, if any thing hits the edge of the windshield it totally cracks. Also having battery issues. on my third battery care has 47 k miles.

**NHTSA ID Number:** 11483436
**Complaint Date:** September 8, 2022
**Incident Date:** September 8, 2022
**Summary of Complaint**
While stopped in a line at a drive through the vehicles automatic shutoff (fuel savings feature) engaged. When the brake is released the car completely shut down, including all computer, dash and vehicle lights. The cars transmission was in Drive

and could not be placed in Park in an attempt to restart the vehicle. After several minutes the car shifted to Park and was able to be restarted after more than one attempt. I exited the very busy parking lot and proceeded to my place of work approximately a half mile away which is a safer location. Each time the brake was depressed the automatic shutoff would attempt to engage immediately, fearing a shutoff/failure in a major intersection I "feathered" the brake to keep engine running. Upon reaching my place of work parking lot and placing the vehicle in Park I was able to disengage the feature. This vehicle has been plagued with issues, it currently has very low miles (less than 5000) and is one year old. It had a battery failure at 600 miles, and has had several issues since that time with the vehicle not starting. Fortunately these issues occurred out of traffic but the latest incident could prove hazardous if it occurred in traffic. When the vehicle diagnostics are run it shows "Normal" and the problem remains unresolved. I have also noted hesitation with the shifting during acceleration from day one of owning the vehicle. It does not shift smoothly and will often hesitate which can pose a danger if attempting to avoid an accident. I have learned to compensate for the issue when pulling into traffic, especially if rapid acceleration is needed. Again, the vehicle diagnostics do not show an issue and the problem remains unresolved.

**NHTSA ID Number:** 11484811
**Complaint Date:**  September 16, 2022
**Incident Date:** April 13, 2021
**Summary of Complaint**
Battery failed in first 6 months of owning the car. Battery was replaced at Gilman Subaru Selma Texas. Battery and relay at North Park Body shop during the repair for hail damage. The car was at this shop from April 20th 2022 until the middle of July 2022. The day the car was picked up the electronic door locks did not work. The car was taken to North Park Subaru to diagnosis and repair a faulty body control module. They have had the car since August 8th. After it was taken back to North Star Collision to try to remedy the issue. North Star Subaru would not honor a warranty claiming outsider influence. On August 15th I was informed that the battery malfunctioned for 3rd time. With exception of about a week and a half since April 20th. I have not had use of my vehicle.

**NHTSA ID Number:** 11484864
**Complaint Date:** September 16, 2022
**Incident Date:** June 1, 2021
**Summary of Complaint**
Battery repeatedly drains with short drives or if car is parked for 72 hours such that the vehicle will not start.

**NHTSA ID Number:** 11486859
**Complaint Date:** September 28, 2022
**Incident Date:** September 27, 2022
**Summary of Complaint**
Battery is draining without cause. It's required two jumpstarts in one week.

**NHTSA ID Number:** 11489609
**Complaint Date:** October 17, 2022
**Incident Date:** October 17, 2022
**Summary of Complaint**
My car battery dies prematurely. I am about to have my third battery since buying the car.

**NHTSA ID Number:** 11501375
**Complaint Date:** January 11, 2023
**Incident Date:** January 8, 2023
**Summary of Complaint**
Battery of the vehicle continues to drain itself at seemingly random times. All sources that could possibly drain the battery while vehicle is not running have been turned off (dome light, tailgate light, exterior lights set to minimum time, etc...). Several times, this drainage has resulted in the car having to be jumped, so driver can get home. Car has been taken to dealer. Dealer indicates battery is fine. Took home, a few days later, battery is dead. Car does seem to struggle to turn over at times when trying to start. Lately this has been noticed while driving the car, and it engine was restarting while shutting down at stoplight (shutdown as part of limiting emmissions); had to turn the automatic shut-down feature off. Contacted local dealer again, was told that nothing can be done if battery is tested and it tests fine. We have resorted to carrying a recharging pack with the car to ensure that our kids don't get stranded with a dead battery.

**NHTSA ID Number:** 11502014
**Complaint Date:** January 16, 2023
**Incident Date:** January 16, 2023
**Summary of Complaint**
Battery had been drained multiple times that required a jump start over the past four months. Also a new battery was purchased. No warnings we're presented before the issue occurred. The latest incident was today.

**NHTSA ID Number:** 11504271
**Complaint Date:** January 29, 2023
**Incident Date:** January 28, 2023
**Summary of Complaint**
On January 28, 2023 at approximately 1930 hours, vehicle battery was dead after being in a parking garage for a week. Vehicle was jump started and being driven on a highway for about 10 miles at highway speeds. At a location on the NYC Harlem River Drive, traffic came to a stop for a minute or so. The 'Auto Start Stop System' stopped the motor as designed. When traffic started to move again, the motor would not restart and the battery was dead. We were disabled in the left lane of an unlit high speed, high volume highway in the dark with our emergency flashers rapidly going dim. After about 45 minutes and numerous near serious collision misses, a tow truck arrived to tow us off of the highway. The system that failed was the 'Auto Start Stop System' and the vehicle is available for inspection. I have 40 years of investigating and reconstructing fatal and serious motor vehicle collisions and this defect put the safety of the motoring public at a serious risk. It is unknown if the problem has been reproduced and the component has not been inspected by the manufacturer. There was not any warning indicators or other symptoms of the problem. To the contrary, the vehicle operator had the false assumption that all systems were operating properly. This defect presents a high risk of serious injury to highway users.

**NHTSA ID Number:** 11515488
**Complaint Date:** April 4, 2023
**Incident Date:** April 2, 2023
**Summary of Complaint**
battery failure

**NHTSA ID Number:** 11516719
**Complaint Date:** April 12, 2023
**Incident Date:** April 11, 2023
**Summary of Complaint**
The contact owns a 2022 Subaru Outback. The contact stated that while the vehicle was parked, she entered the vehicle to start the vehicle; however, the engine failed to turn over. An unknown electrical system warning light was illuminated. The vehicle was towed to the dealer where it was diagnosed that the battery tray and battery holder needed to be replaced. The vehicle was not repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 9,322.

**NHTSA ID Number:** 11517709
**Complaint Date:** April 18, 2023
**Incident Date:** April 17, 2023
**Summary of Complaint**
Tried to start outback and nothing, no clicking for battery dying, just nothing. Tried again and again, no noise in engine at all. Waited 2 minutes longer and it finally turned over and started.

**NHTSA ID Number:** 11520961
**Complaint Date:** May 8, 2023
**Incident Date:** May 4, 2023
**Summary of Complaint**
This vehicle has 3 major issues that the dealership has not been able to resolve and are as follows: 1) Battery---is not able to hold charge. In early 2022, dealership replaced a new battery, however, the problem still exists. Battery size does not have the charge capacity REQUIRED to start the vehicle even less than 1 week of parking during warm weather months. 2) Heating System---has a defect, specially on driver side of the system. With seat and steering heating on, the vents on driver side emit uncontrollable hot air that forces the driver to shut the driver side heating system. During winter this is unreasonable! Did inform the dealership of this issue and were unable to resolve the problem as I understand was inherent with the design. This problem is likely to cause fire if electrical wires are exposed to the heat. 3)Tires--- are supposed to be inflated with nitrogen, and this innovation is to maintain the tire pressures for most weather conditions. However, all of my five tires are unable to maintain the pressures. Did bring it to the attention of dealership at each service. However the problem still persists. Possible problem can be any of the following individually or in combination: a) Seal between the tire and rim is inadequate. b) Slow leakage in tire valves or c) Tires are of poor quality permitting air to escape from the body of the tires.

**NHTSA ID Number:** 11524985
**Complaint Date:** June 2, 2023
**Incident Date:** June 2, 2023
**Summary of Complaint**
Car would not start this morning. It's driven every day, so it had not been sitting. Last service was 3/23 (today is 6/2/23), and the battery passed dealership inspection with no issues. Roadside serviceman stated this was the fourth "relatively new" Subaru he'd had to jump this week. Jumping the battery fixed the issue (for now), but the Subaru dealership, themselves, advised submitting a claim for potential "parasitic battery drain." However, the current class action suit only covers 2015-

2020 Subarus, and mine is a 2021 Outback.

**NHTSA ID Number:** 11525148
**Complaint Date:** June 3, 2023
**Incident Date:** May 31, 2023
**Summary of Complaint**
1. Vehicle doesn't start when sitting just for a couple of days. Battery isn't dead as lights, radio, etc work. The vehicle will start if jumped. Happened last year and was in and out of the dealership 3 times with this issue. They replaced the battery, but issue still persisted. They ended up doing a "software update " which seemed to fix the issue. But just a year later I'm having a very similar issue with the vehicle not starting. This vehicle only has 14,000 miles on it. Do their batteries only last 1 year/ 7l miles? 2. The information screen freezes quite a bit we're you're not able to control the radio, air/heat etc. there seems to be electrical issues with this vehicle.

**NHTSA ID Number:** 11529149
**Complaint Date:** June 27, 2023
**Incident Date:** March 29, 2023
**Summary of Complaint**
Multiple occasions of dead battery or stalling in an intersection have occurred since the car was 6 months old, with mileage of only 3,000 miles. Dead battery accompanied by electrical malfunctions such as loss of nav system, climate control system, and driving safety systems. Battery failure in cold weather in Michigan winter resulting in long waits for tow truck. Loss of heat in very cold temps on a road trip.

**NHTSA ID Number:** 11543804
**Complaint Date:** September 11, 2023
**Incident Date:** September 10, 2023
**Summary of Complaint**
Repeated dead battery with no known cause

**NHTSA ID Number:** 11545464
**Complaint Date:** September 19, 2023
**Incident Date:** May 16, 2023
**Summary of Complaint**
The 2021 Outback XT which we purchased new on April 15, 2021, would not start on September 15, 2023. My spouse had a medical appointment that morning. On September 18, 2023, the vehicle would not start again. My spouse had a medical appointment that morning as well. This same problem occurred several months

earlier. On the morning of May16, 2023 I called the dealership's service department for a service appointment. This was the first such incident and caught me totally by surprise. Here is a direct quote from the Service's Manager's May 19, 2023 email. " The tester/charger determined that your battery was healthy, had a good state of charge and accepted a good rate of charge and also held the charge. The battery has no fault, the drain was the issue determining replacement of your battery was unnecessary and not warrantable." The dealership service department manager went on to state "it (battery)required 3 hours and 45 minutes of charging". Following the May 16, 2023 service appointment the vehicle performed as expected until the morning of September 15, 2023. On September 19, the vehicle was again taken to the dealership for servicing. During this visit, a "new battery" was installed by the service department because they determined the existing battery failed their test. The service rep stated the "new" battery will fix the problem. Also, the service rep stated, when asked, that the Electronic Control Module was updated but the Data Communications Module was not replaced. Additionally, the rep stated, when asked, the "new" battery did not carry the normal warranty because it was installed under the vehicle's existing 3-year warranty which expires on April 15 2024. This limited battery warranty makes no sense. Since the May 16, 2023 incident, we experienced emotional tension every time we have driven the vehicle, dreading it would not start when we needed the vehicle the most. We are 70+ and believed that we were purchasing a safe vehicle.

**NHTSA ID Number:** 11557430
**Complaint Date:** November 29, 2023
**Incident Date:** November 2, 2023
**Summary of Complaint**
I have experienced premature rear brake wear and excessive tire wear. Issues with infotainment system and pre-collision braking system. (1) Regarding Tires: Performed all dealer recommended tire rotations and aligned vehicle when recommended. Needed new tires at 31,169 miles. Tires showed excessive inside wear. Bought new tires from a 3rd party shop and had alignment done with hunter alignment system. Showed rear right camber at -2.0. Subaru recommends -1.8 to 0.3. Rear camber is not adjustable on this model. Took vehicle back to dealer for brake job and they said camber was fine...there is a spec for a reason. Did not want to attempt to bring it in spec with aftermarket kits (i.e. adjustable cam bolt) or fix under warranty. (2) Regarding Brakes: Needed new brakes at 31,169 miles. Not covered under warranty and not what I would consider typical wear based on my driving style and my past experience with Subaru vehicles. If this is an expected side affect of the EBD system I would highly recommend Subaru consider ways of improving brake life on their vehicles. (3) I have the Onyx XT trim with navigation.

Infotainment system is constantly glitchy. Examples include booting with blank black screen, failing to load, excessive lag while operating system or will freeze and beep repeatedly while buffing a menu selection. Also, had my car battery replaced under warranty within the first two years due to a bad battery. (4) Issues with ADAS system, specifically pre-collision breaking. This system is extremely sensitive and will over-react / take control in certain situations where I didn't need it to even when I was in the process of braking. Have had this system activate on the highway at high speeds while switching lanes on the highway or when having a vehicle merge quickly into my lane in front of me. Constantly, have to turn off this system which is a chore as this system is defaulted to always being on. Do not feel safe driving with this system on.

**NHTSA ID Number:** 11564900
**Complaint Date:** January 11, 2024
**Incident Date:** January 9, 2024
**Summary of Complaint**
The contact owns a 2022 Subaru Outback. The contact stated that while driving at slow speeds, there was a smoke odor inside the cabin of the vehicle. After a visual inspection of the engine compartment, the contact observed smoke coming from the battery. No warning lights were illuminated. The vehicle was taken to the dealer, who was unable to determine the cause of the failure. The vehicle was not repaired. The manufacturer was not notified of the failure. The failure mileage was 40,000.

**NHTSA ID Number:** 11575144
**Complaint Date:** March 3, 2024
**Incident Date:** November 15, 2023
**Summary of Complaint**
The vehicle has a power drain that occurs randomly. I purchased the vehicle used in Jan 2023. The car is driven daily at least 40-50 miles. The first occurrence it would not start in 11/23, jump started and it was fine for 3 months. The second time it would not start I checked the battery and it was completely drained. Jump started and I have had no problems yet. No accessories or lights were left on. I have a monitor on the OCB port and it shows the battery voltage on a 24 hour scale. I can see it drops down to a low level for a short time every 4-5 hours and then returns to normal. I don't want to lose the battery in the middle of nowhere.

**NHTSA ID Number:** 11591762
**Complaint Date:** May 31, 2024
**Incident Date:** May 20, 2024
**Summary of Complaint**

The contact owns a 2021 Subaru Outback. The contact stated while starting the vehicle, the starter motor was making an abnormal clicking sound. The contact stated that after several attempts the vehicle was started. Additionally, the contact stated that at times the instrument cluster was blank. The contact stated that he purchased a battery charger and recharged the battery; however, the failure persisted. The contact stated that once he had fully charged the battery the vehicle was started; however, sometimes the vehicle failed to shut off and the battery terminals had to be disconnected. The contact drove the vehicle to a local dealer who diagnosed that the OE battery was not sufficiently powerful to start the vehicle and provide power all the electrical functions. The dealer installed a new battery with more amperage and new cables. The vehicle was repaired. The contact was informed by the dealer that the manufacturer was made aware of the failure. The manufacturer was informed of the failure. The failure mileage was approximately 34,000.

**NHTSA ID Number:** 11593503
**Complaint Date:** June 10, 2024
**Incident Date:** June 10, 2024
**Summary of Complaint**
The contact owns a 2021 Subaru Outback. The contact stated while attempting to start the vehicle, the vehicle failed to start. There was no warning light illuminated. The contact was able to jumpstart the vehicle. The vehicle was taken to an independent mechanic where the vehicle was diagnosed with battery failure. The contact was informed that the battery needed to be replaced. The battery was replaced; however, the failure persisted. The dealer was contacted, but the vehicle was not repaired. The manufacturer was not made aware of the failure. The failure mileage was approximately 57,000.

**NHTSA ID Number:** 11607996
**Complaint Date:** August 12, 2024
**Incident Date:** August 3, 2024
**Summary of Complaint**
2021 Subaru Outback Limited | ~13000 miles | Component: Battery | Car suddenly stopped and ALL warning lights started flashing at a busy traffic signal, while I was waiting to take a left turn (lucky to have escaped safely from that situation). I had to turn the car off and restart it. 2 days later, the car would not start at all. Tried jumping it multiple time in vain. Had to tow the car to the nearest Subaru service center. Technician ran a diagnostic and concluded that the battery was not holding any charge at all and it was deemed faulty. Reading many posts on reddit and other forums of many Subaru owners facing the same issue from older (2015) to newer models. Many of them also complained of Parasitic drain on the battery due to faulty

DCM on Starlink. Note: there was no warning lights/messages or any other symptom before this. This was a Subaru certified pre-owned car that went through a 152 point inspection in 2023.

**NHTSA ID Number:** 11611502
**Complaint Date:** August 29, 2024
**Incident Date:** August 28, 2024
**Summary of Complaint**
Battery drains quickly and renders the car inoperable. Possibly due to Controller Area Network (CAN) not entering sleep mode when vehicle is not being used resulting in a parasitic battery drain.

**NHTSA ID Number:** 11611911
**Complaint Date:** August 31, 2024
**Incident Date:** August 23, 2024
**Summary of Complaint**
Parasitic Draw on battery: Original battery was dead after sitting 5 days; Bought new AMG and it has also died after 4 days sitting.

**NHTSA ID Number:** 11614962
**Complaint Date:** September 16, 2024
**Incident Date:** September 14, 2024
**Summary of Complaint**
Battery keeps draining if car isn't driven for a few days battery is drained to point of it being dead, cannot get into car, will not start, leaves you stranded. This is the fourth time this year, dealer checks it out tells me nothing is wrong. I have read many problems with parasitic battery drain with subaru's even that the alternator is programed not to fully charge the battery to save gas. getting tired of the issue to the point where I am thinking of selling the car and finding something that will not leave me stranded. This time when I checked the battery voltage it was 5.80 volts and .29 amps.

**NHTSA ID Number:** 11628810
**Complaint Date:** December 4, 2024
**Incident Date:** December 2, 2024
**Summary of Complaint**
The car has been to the dealership five times for electrical/computer issues. First the main dash UI computer screen would occassionally lock up and freeze shutting all safety systems off. (cruise control, lane holding, blind spot warning, etc.) Then the battery failure issues started - basically four times the car when parked and sitting

overnight for approximately one week - will not start and the battery is completely dead. This is a know Subaru issue with earlier models and even involved a class action lawsuit. Subaru has not fixed the issue in newer model cars and continues to deny it is an issue. This is gross negligence by continuing to make unsafe cars with the same flaw and nof fixing the issue.

**NHTSA ID Number:** 11640222
**Complaint Date:** February 2, 2025
**Incident Date:** February 2, 2025
**Summary of Complaint**
2ND time car won't start. First time was 6m ago, pulled battery, tested, bad, replaced battery. Getting ready to charge battery, if bad, will tow to subaru dealership. Last time, subaru tested, said nothing wrong. if your car won't start, how do you function. Went on line and you can't believe how many people suffer with this. Seems like the same drain on the system, from starlink, lights, not shutting down like there supposed too.

**NHTSA ID Number:** 11675023
**Complaint Date:** July 21, 2025
**Incident Date:** September 10, 2024
**Summary of Complaint**
Last year, my car would not start up again after the start stop feature activated in an intersection. This is after leaving the dealer who told me the car was fine. I've since replaced the battery. It still is sluggish to start at times. It is especially bad starting when start stop is activated. I turn the feature off every time I start the car. I'm worried every time I take a long trip I will get stranded. The dealer cannot find anything wrong with it they say. The automatic braking system is also horrible. It goes on prematurely and I'm sure damages the car.

**NHTSA ID Number:** 11697533
**Complaint Date:** November 4, 2025
**Incident Date:** November 4, 2025
**Summary of Complaint**
I was stopped at a stop sign and the car shut off as the auto on/off function. When I went to drive the car did not re-start as the battery needed replaced. I was left stranded in an intersection. The battery did need to be replaced. The auto start/stop feature is a saftey hazzard on any vehicle

**NHTSA ID Number:** 11702627
**Complaint Date:** December 3, 2025
**Incident Date:** December 2, 2025
**Summary of Complaint**
I experienced two serious electrical failures within a few days that caused the vehicle to stall without warning. At Nov 29, 2025, after parking for about 20 minutes, the car would not start. Symptoms included: • Very weak clicking from the starter • Dashboard flickering and dimming • Unable to shift out of Park without manual override • Jump-start did not work even though power was delivered The vehicle was towed to the Subaru dealer. The dealer reported: • Battery "low but fine after charging" • Alternator "normal" • Starter "normal" • No warning codes On Dec 2, 2025 the vehicle had been released without repairs. Only a few minutes after leaving the dealer, the car stalled in live traffic during an Auto Stop/Start event. Symptoms: • Immediate loss of all electrical power • All warning lights flashing erratically • Hazard lights did NOT illuminate externally • Gear shifter locked again • Vehicle would not restart on battery • Subaru roadside assistance jump-started the vehicle With Auto Stop/Start disabled, it was barely drivable and returned to the dealer. This appears to be a serious electrical or charging-system failure, possibly involving: • intermittent alternator failure • voltage collapse during Auto Stop/Start • BCM or power distribution fault The vehicle can stall unpredictably in traffic without warning, creating a significant risk of collision.This is not normal battery discharge — the battery was fully charged at the dealer minutes before the second failure. I am filing this complaint because this issue is dangerous and the dealer cannot reproduce or diagnose it. A formal investigation or recall may be necessary.

**NHTSA ID Number:** 11732036
**Complaint Date:** April 18, 2026
**Incident Date:** December 31, 1969
**Summary of Complaint**
This 021' outback XXX purchased in 023'/ 24k Mi Freehold subaru. freehold NJ 'if purchased new would've been on the desk of a local lemon law attorney by now. Over the few years the lock unlock function of key fobs stubbornly, randomly & repeadedly dont work. Freehold subaru saw no problem. Front passenger window months ago wouldn't go up. Freehold subaru supposed repaired at a cost to me. Recent cold weather with a brand new battery of 6 Mos old rendered the car unable to start or boost. Vehicle towed to Freehold tire center st freehold NJ, replaced a $400 battery. brought the 6 mo. old battery back to auto zone who load tested and advised nothing Wrong w battery? Not to mention the sub standard BS feature of coming to a stop, foot on brake & engine stopping-starting when proceeding? this is something of concern of being rolled over by an approaching truck in the rear of this

47

021' outback because 3 times when stopping at a red light the engine shut off and when proceeding, foot off the brake the engine wouldn't re-start & all the indicators on instrument cluster lit up, had to restart the car. Recent event where my wife, [XXX] old legally disabled- primary driver comes out of a store, starts the outback, puts in reverse to back out of a spot and the car dies. This vehicle is being brought into Freehold subaru south st. Freehold NJ Tues morning Apr. 21st 026' south st and is not being picked up due to it being unsafe to operate. Until all the issues are corrected. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

## ASCENT

**NHTSA ID Number:** 11420375
**Complaint Date:** June 10, 2021
**Incident Date:** June 5, 2021
**Summary of Complaint**
After leaving liftgate open for a while, battery was dead. Learned from website that this was known issue for Subaru's with automated liftgate. As i was camping with no cell signal, it was super difficult to get help and this could lead to the really big issue. This is the known issue for a while and I was shocked to Leane that Subaru did nothing to fix this.

**NHTSA ID Number:** 11458538
**Complaint Date:** March 27, 2022
**Incident Date:** March 20, 2022
**Summary of Complaint**
The battery went dead even though the car was parked in the garage and had been driven recently. AAA was called to jump start it. The vehicle only has 5k miles on it, so it shouldn't be having battery problems. We are lucky this happened at home.

**NHTSA ID Number:** 11464917
**Complaint Date:** May 16, 2022
**Incident Date:** May 10, 2022
**Summary of Complaint**
1. The electrical system/battery failed after only 392 miles. Car could not be jumped. When the cables were put on the battery, the tech said they got real hot (which leads us to believe it was shorting out.) Even though Subaru blamed the battery, the dashboard lights, the horn, and the headlights were all flickering and flashing like a Christmas tree. The car had also just been driven 45 minutes before. Subaru blamed driver error on not shutting the car off properly, but according to a class-action

48

lawsuit, Subaru is aware of this happening with other Subaru vehicles. 2. The car would not start in an unsafe neighborhood after dark. We also experienced a burning smell in our garage for the past few months, which disappeared now that the Subaru has been at the garage for a week. 3. Not confirmed. The Subaru dealership blamed driver error and improper shut off of the ignition. 4. No inspections have been done except by the Subaru dealership. 5. No warning. The car had just been driven for 45 minutes, we parked and came back 45 minutes later and it would not start. At that time, the battery light came on, the car's headlights started to flash, and the dashboard lit up. Looking back, the burning smell in our garage might have been a clue.

**NHTSA ID Number:** 11486448
**Complaint Date:** September 26, 2022
**Incident Date:** August 1, 2022
**Summary of Complaint**
The battery died after 2 years and 15000 miles. I was with my whole family ( 2 months old, 2 and 4 years old) away from home. I was able to reach the dealership leaving my family in a store and they said that nothing was wrong with the battery. Next day the car wouldn't start and they finally replaced the battery under my extended warranty. Today I discover that there is a class action settlement for older models of my car. I was advised to write a complain to you. Apparently they didn't fix the problem with newer models either.

**NHTSA ID Number:** 11489008
**Complaint Date:** October 12, 2022
**Incident Date:** August 16, 2022
**Summary of Complaint**
The battery constantly drains when the car is not in use for a very short time. It appears to be an electrical drain. I have already replaced the battery two times and the car has less than 15,000 miles. Apparently this is the same problem as in the 2016 - 2019 class action suit.

**NHTSA ID Number:** 11490453
**Complaint Date:** October 23, 2022
**Incident Date:** October 15, 2022
**Summary of Complaint**
Car would not start in morning. @20,000 miles. Battery dead..not even trying to turn over..Had to get car jumped then all safety features went dead..looked on Subaru sight and it showed every safety feature disabled..I did not drive car till next day to bring to dealer..next day all features fine like nothing happened..Dealer found nothing wrong. Dealer tested battery and showed fully charged..

**NHTSA ID Number:** 11572635
**Complaint Date:** February 18, 2024
**Incident Date:** February 1, 2022
**Summary of Complaint**

The vehicle has a parasitic battery draw. I purchased a new gel cell (Redtop) battery, the most powerful one that fits the car, and was reimbursed by Subaru. The car battery still goes totally dead after about one week, even with occasional driving. I have to carry a jump battery in case I am traveling to insure that I can get the car started when I stop.

**NHTSA ID Number:** 11572800
**Complaint Date:** February 19, 2024
**Incident Date:** February 19, 2024
**Summary of Complaint**

After 3 years the battery died completely and the car was unable to start, I replaced the battery with AAA and the next the day, it also died again. I was able to jump start the battery the next day and continued to use the vehicle. I have the battery for about a month and again the battery on the vehicle had drained where I was unable to start the car but I was able to jump start the car with a battery jump starter. There has been 3 occasions of battery just draining and I have a new battery installed. I called Subaru and they mentioned that there could be an issue with the back latch no closing which could drain the battery, however, the have confirmed that the back door does completely close and lock or it will just automatically come back up. I feel there is something wrong with the electrical system and AAA has confirmed with me the the alternator or the battery is functional.

**NHTSA ID Number:** 11610464
**Complaint Date:** August 23, 2024
**Incident Date:** August 10, 2024
**Summary of Complaint**

Battery draining. Bought car from dealership preowned with 25k miles. Owned it for 3 weeks and so far -Battery dead, jumped it, good for a day then dead again. - took back to dealership, said bad battery, replaced it, good for a week and a half then dead again -scheduling to go to a subaru dealership for diagnoses Ive read about the DCM on these vehicles trying to connect to 3g towers continously even when the car is off. The 3g towers are no longer in use in the USA. Subaru should have a software update to remedy this issue but have not found that thus far. Just a lawsuit over this issue.

## IMPREZA

**NHTSA ID Number:** 11415252
**Complaint Date:** May 5, 2021
**Incident Date:** May 4, 2021
**Summary of Complaint**
THE VEHICLE WAS SITTING AND BEING STARTED ON A WEEKLY BASIS UNTIL RECENTLY WHERE WE HAD AN ISSUE WITH THE BATTERY NEEDED TO BE REPLACED

**NHTSA ID Number:** 11417729
**Incident Date:** May 18, 2021
**Complaint Date:** May 19, 2021
**Summary of Complaint**
The battery dies after just sitting in my home after a day.

**NHTSA ID Number:** 11442745
**Complaint Date:** December 5, 2021
**Incident Date:** January 23, 2021
**Summary of Complaint**
Purchased Impreza Limited 10/31/19. On 1/23/21, car would not start. AAA said battery not good & installed a new battery. On 7/4/21 car would not start; battery jumped by AAA. On 9/10/21 car would not start. AAA said battery not good & installed a new battery again—3rd battery since I purchased car. On 7/22/21 Subaru of Morristown said they checked for parasitic drain, and told me it is "within specs." They said I don't drive enough miles. End of July 2021 I (a senior woman) purchased a Battery Tender which I must attach to the battery whenever the car is parked in my garage.

**NHTSA ID Number:** 11447335
**Complaint Date:** January 13, 2022
**Incident Date:** January 12, 2022
**Summary of Complaint**
Vehicle was purchased new by original owner. Battery died at 5,709 miles and was replaced by dealer. I purchased the vehicle as a CPO. Second battery died at 8,077 miles and was replaced by dealer. Third battery died at 8,836 miles and was replaced by dealer. Old batteries were disposed of by dealerships, surely, and are not available for inspection. Safety concern is chiefly of failure when the vehicle is off, not during driving. Problem has been confirmed at each dealership visit. Note that there are several class-action lawsuits pending against Subaru for prematurely dying batteries.

51

No warning was given by vehicle except for a slightly longer engine start the time before catastrophic draining of battery and failure of engine start. Though anecdotal, non-Subaru technicians feel it's not defective batteries but rather a defective electrical system, specifically the controller area network.

**NHTSA ID Number:** 11448989
**Complaint Date:** January 26, 2022
**Incident Date:** January 26, 2022
**Summary of Complaint**
P205/50R17 Driver side rear tire suddenly experiencing lots of pressure compared to others. Example 27.7 psi on a subject tire compared to 32.0 psi on others after approximately one week of garage storage. Upon inspection, tread separation/ visible cracking is visible on approximately 1/2 of the circumference of the tire. No warning lights from the vehicles tire pressure monitor system has activated and no trouble codes for that system or others are present, indicating the vehicle at least is not aware of a problem with the tire. Tire pressure sensor reports good battery, accurate pressure when compared to Tire gauge pressure, and reports temperature of approximately the ambient temperature (at the moment, is currently 57.0°F). Vehicle has been mostly garage kept since purchase due to Covid. Has experienced normal North Carolina Summer temperatures though recently within two weeks North Carolina has had some of the coldest weather in some time (Lows mid teens, highs low 30s). Manufacturer has been contacted and currently awaiting response. With my previous experience and knowledge in the automotive industry, it appears that the visible cracking on the tire is relatively new. The inner portions of the cracked area, for instance, are clean and free of any debris, dust or dirt.

**NHTSA ID Number:** 11455422
**Complaint Date:** March 6, 2022
**Incident Date:** March 6, 2022
**Summary of Complaint**
The battery dies sporadically when the car has been parked for a short time or a day or two. No telling when it will happen, but suddenly the car will not start. Subaru dealer says there's nothing wrong, but obviously there is. This has happened three times already, once in 25- degree weather with a 15-degree wind chill. I have checked all the lights and keep the headlights turned off, as I don't drive at night. So far this has happened only when the car is parked, but what if it happens when I am driving? Date given below is the third incident. The others were in late January and February.

**NHTSA ID Number:** 11548106
**Complaint Date:** October 3, 2023
**Incident Date:** October 3, 2023
**Summary of Complaint**
This is my first car and im completely disappointed I purchased it bc of safety. My car battery keeps dying I purchased my car in 2019 and since then i have changed it 4 times. I keep taking it to the dealer and telling them is a parasitic drainage and nothing yet. On top of that the recall for the headlights over a year and nothing. Im never buying a subaru again!

**NHTSA ID Number:** 11665374
**Complaint Date:** June 6, 2026
**Incident Date:** March 6, 2025
**Summary of Complaint**
On [XXX], my 2022 Subaru Impreza caught fire in Lincolnwood, IL. My sister in-law and nephew escaped the vehicle just before it was consumed by the fire. The Lincolnwood Fire Department Fire Inspector said the fire was caused by a defected car battery. The car was declared a total loss. Subaru America only offered $2,000.00 credit towards the purchase of a new Subaru. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

## CROSSTREK

**NHTSA ID Number:** 11415012
**Complaint Date:** May 3, 2021
**Incident Date:** January 15, 2021
**Summary of Complaint**
MY CAR WOULDN'T START AFTER STOPPING TO VISIT A FRIEND. THE FRIEND WATCHED UNDER THE HOOD WHEN I PRESSED THE START BUTTON. HE SAW SPARKS FROM UNDER THE HOOD. I HAD DRIVEN OVER 27 MILES THAT DAY BEFORE THIS HAPPENED. THE DEALER SAID IT WAS BECAUSE I MADE TOO MANY SHORT TRIPS. THEY OFFERED TO INSTALL A BATTERY CHARGER WHICH I DON'T FEEL SHOULD BE NECESSARY ON A BRAND NEW CAR.

**NHTSA ID Number:** 11421689
**Complaint Date:** June 21, 2021
**Incident Date:** June 1, 2021
**Summary of Complaint**

If car sits unused for 2 or 3 days, the battery will have slowly drained down to the point where the car won't start. It seems that the car's internal electronics drains the battery down, even if the car isn't being operated. Even if the car is being operated, the battery is only charged up to about half of a full charge which contributes to the battery drain problem. The dealer says that the car should be started up every day to keep this problem from occurring, but that doesn't seem reasonable, and is practical if the car needs to be parked a few days at the airport.

**NHTSA ID Number:** 11422223
**Complaint Date:** June 24, 2021
**Incident Date:** June 24, 2021
**Summary of Complaint**
I'm having continuous problems with my car not starting or a dead battery. It has been in for for service 3x for this issue abc one of those times they replaced the battery. On 6/24/21 I picked up my car from the service department after leaving it there for several days only for them to tell me nothing is wrong with my car. 20 minutes later and my car won't start which I captured on video. This car seems to have an electrical issue that no one wants to admit to.

**NHTSA ID Number:** 11422811
**Complaint Date:** June 29, 2021
**Incident Date:** June 25, 2021
**Summary of Complaint**
On June 25, 2021 we had driven from Seattle to Spokane, WA and stopped at the Sprague Lake Rest Stop. When we returned to our car and sat in the car for about 15 minutes our car failed to start. The temperature outside was about 100 degrees. After 3 attempts by fellow travelers Roadside Assist and a Tow Driver our car failed to start so it was towed to the Suburu dealer in Spokane Washington where a battery was replaced. The only reason that was given for the failure was that we sat in the car for a time before we started the car and the batter;y was drained because of the presence of the keys. Our batter has failed on 3 other occasions. Because we do occasional car trips we no longer feel safe in this car

**NHTSA ID Number:** 11427748
**Complaint Date:** August 4, 2021
**Incident Date:** August 3, 2021
**Summary of Complaint**
The contact owns a 2019 Subaru Crosstrek. The contact stated that the vehicle would not start which resulted in the battery needing to be replaced. The contact stated that the check battery message was displayed on the instrument panel. The vehicle was

diagnosed and repaired. The manufacturer was not informed of the failure. The failure mileage was approximately 42,000.

**NHTSA ID Number:** 11435156
**Complaint Date:** October 1, 2021
**Incident Date:** December 28, 2020
**Summary of Complaint**
2 battery failures in 2 years of purchasing vehicle. I am on my third battery in less than two years. Incidents occurred 15, 19, 23 and 24 months into car ownership. 4 battery / electrical related dealer service visits in 2 years. 2 times the car was immobilized due to battery failure, would not start and required a tow to dealership service. On 3 occasions lost car audio - no audio map directions, no hands free phone calling, no radio. On 1 occasion lost all internal lighting on entire instrument panel and all switches during night driving on one occasion creating a serious driving hazard and safety issue. All issues occurred with no warning lamps, messages or other symptoms. Only Subaru Dealer service has inspected and replaced/ recharged the batteries. Dealer service claimed they could not reproduce the problem once they replaced or recharged the batteries.

**NHTSA ID Number:** 11438312
**Complaint Date:** October 27, 2021
**Incident Date:** October 26, 2021
**Summary of Complaint**
Battery continually does not hold charge over any time longer than a few days parked. Even after long drive from Wisconsin to Ohio, car sitting for 6 days in cool weather (never under 40 degrees) caused dead battery. Battery has been replaced by Subaru dealer 3 times previously, each time dealer said they could not detect a problem. In winter, battery is dead each night, even with normal daily use each day.

**NHTSA ID Number:** 11438833
**Complaint Date:** November 1, 2021
**Incident Date:** November 1, 2021
**Summary of Complaint**
After driving for a few when I come to a stop or slow down to a lower gear and accelerate it starts to stall out and the lights dim a bit slightly. It does not do it on the highway or at higher rates of speed. I've checked battery, watched allot of the parameters on a diagnostic tool and didn't see anything out of the ordinary or any codes even when almost stalling out in a intersection. It would have left me to oncoming traffic. It didn't die but it was rattling rumbling and stalling. It's like the transmission is trying to keep it at a super low gear to save gas? I checked for recalls

and it states none. I just got this car and it has 40k miles and is still new. I love this car and feel super safe driving it . I traded my abarth for it and it was really hard to part but this car makes up for it. I'm calling the Subaru dealership and dealership I got it from. I've owned it less than a month.

**NHTSA ID Number:** 11441155
**Complaint Date:** November 20, 2021
**Incident Date:** November 20, 2021
**Summary of Complaint**
Battery drains quickly.

**NHTSA ID Number:** 11444366
**Complaint Date:** December 20, 2021
**Incident Date:** December 19, 2021
**Summary of Complaint**
Today, 12/19/2021, marks the sixth (6th) time my car's battery has failed and forced me to call Star Link to schedule and wait for a battery jump. Subaru refused to replace my battery after the 3rd and also refused to check the grounding wire upon a service inspection. This battery is faulty and Subaru knows it. My child has been with me in three of th de ridiculous occasions of waiting for jumper cables and has been frightened each time. This is totally unacceptable and is costing my family time, money, and emotional distress.

**NHTSA ID Number:** 11448675
**Complaint Date:** January 24, 2022
**Incident Date:** January 9, 2022
**Summary of Complaint**
The battery dies completely, seemingly under colder conditions. In the first case it was after 6 days of not turning the car on, however the next time it happened after only a day and a half of not turning on the vehicle. The vehicle is only a few months old so the battery or other cause of the dead battery (eg alternator) are only a few months in use.

**NHTSA ID Number:** 11450784
**Complaint Date:** February 7, 2022
**Incident Date:** February 5, 2022
**Summary of Complaint**
The main battery drained completely while parked, once when left overnight, and once while on an errand for 30 minutes only. AAA jump-started car first time and Subaru Roadside Assistance the second. First incident was mid January 2022 when

the new car had been in my possession for only 5 weeks (Dec 3 2021). Second incident happened one month later on February 5 2022. Subaru had no explanations other than I might have left doors open. In the second occurrence that was most definitely NOT true as I am now extra careful to turn everything electrical off and check all doors are fully closed. Being stranded alone on the roadside is not something I am in any way comfortable with.

**NHTSA ID Number:** 11453205
**Complaint Date:** February 21, 2022
**Incident Date:** January 22, 2022
**Summary of Complaint**
Battery won't hold a charge. Car is not reliable, danger of not starting and being stranded. Car has been inspected by dealership twice and new batteries were installed but the problem persists. No warning of low battery.

**NHTSA ID Number:** 11481159
**Complaint Date:** August 25, 2022
**Incident Date:** August 25, 2022
**Summary of Complaint**
The contact owns a 2021 Subaru Crosstrek. The contact stated that the battery was drained quickly, causing the battery to need frequent recharging. The vehicle was taken to the dealer where it was diagnosed that the battery needed to be replaced. The vehicle was not repaired. The manufacturer was made aware of the failure and informed the contact that the replacement was not covered under warranty. The failure mileage was 1,300.

**NHTSA ID Number:** 11489870
**Complaint Date:** October 18, 2022
**Incident Date:** October 15, 2022
**Summary of Complaint**
Repeatedly battery drains after a few days of not driving. Won't start. Requires a jumpstart.

**NHTSA ID Number:** 11494300
**Complaint Date:** November 20, 2022
**Incident Date:** January 17, 2022
**Summary of Complaint**
Battery Drain problem. Subaru had to replace the battery in January of 2022. That did not resolve the issue. My battery started dying again in June of 2022 & I have to constantly jump start my car. I complained to Subaru & brought my car in for

57

servicing but all they did was test the battery immediately after it was driven on the highway for approximately 20 miles. The issue is not the battery, it is the electrical system that drains the battery.

**NHTSA ID Number:** 11517946
**Complaint Date:** April 19, 2023
**Incident Date:** March 31, 2023
**Summary of Complaint**
The manufacturer has failed to repair an open recall in a timely manner. Our Crosstrek Hybrid's 12-volt battery frequently needs charging and has been jumped a half dozen times in as many months and replaced twice since November.

**NHTSA ID Number:** 11563077
**Complaint Date:** January 2, 2024
**Incident Date:** December 28, 2023
**Summary of Complaint**
The digital communication module (DCM) on this Crosstrek is faulty and is leading to parasitic drain on the car battery. This defect is consistent with other Subaru models such as the Outback. However, this specific model and year was not included in the class action suit and order but the issues are similar.

**NHTSA ID Number:** 11568997
**Complaint Date:** January 31, 2024
**Incident Date:** January 31, 2024
**Summary of Complaint**
Battery drains rapidly and completely, sometimes overnight. Five times in less than one year. After a full charge only lasts a few days. Battery replaced but still happens. Others tell me it is a parasitic drain caused by "DCM" and/or faulty Starlink software. Dealership cannot seem to fix this after repeated attempts.

**NHTSA ID Number:** 11595485
**Complaint Date:** June 20, 2024
**Incident Date:** December 20, 2023
**Summary of Complaint**
The contact's significant other owns a 2020 Subaru Crosstrek. The contact stated while his significant other was driving from a complete stop, several unknown warning lights illuminated. The contact stated that the failure had been recurring. The vehicle was taken to the dealer several times. The dealer replaced the battery, the fuel cap, and cleared the warning lights; however, the failure persisted. The vehicle was towed to the dealer, where it was being diagnosed. The vehicle was not

yet diagnosed or repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 51,000.

**NHTSA ID Number:** 11626207
**Complaint Date:** November 19, 2024
**Incident Date:** November 18, 2024
**Summary of Complaint**

The contact owns a 2021 Subaru Crosstrek. The contact stated while driving at an undisclosed speed, the vehicle shut off unintendedly and failed to restart. The contact stated that several unknown warning lights were illuminated. The vehicle was towed to the dealer where it was diagnosed and determined that the battery had failed. The vehicle was not repaired. The manufacturer was notified of the failure and opened a case. The approximate failure mileage was 27,000.

**NHTSA ID Number:** 11659413
**Complaint Date:** May 7, 2025
**Incident Date:** April 2, 2025
**Summary of Complaint**

1. Subaru 2022 Crosstrek accelerated on its own when foot is on the brake and trying to move the shifter knob to park, instead the car thursted into the parked car in front with such force that ran into the garage. 2. Towed car to Subaru dealer informed to escalate to Subaru of America, opened a case #250402-1600810, please see attached email communication. 3. Subaru will not respond unless I signed a consent to extract EDR (event data recorders) for inspection but denied me to be onsite or a copy of the files, The data retained from EDR is the property of the owner, per section 563.5 of title 49, Code of Federal Regulations. 4. 4 weeks later, Subaru issued the results of this vehicle indicate it has no brake, accelerator or throttle abnormalities. Also quoting the police report that I provided. 5. There was no EDR saved in the accident, Subaru cannot provide any summary or why the computer did not capture any of the events, the brake pedal, gas pedal, etc. 6. There has been over $12,000 damage on the Subaru, over $7,000 on the parked car, and the garage door. The insurance repair for the vehicles only address body work and no mention of the EDR testing, engine and throttle, eyesight, etc. 7. Subaru should be more transparent and issue the summary of the inspection from the team, not the Adovcacy (advocating for Subaru). The car battery went completely dead on March 14, 2025 and was told there is nothing wrong with it after the dealer service center look at it on March 15. The inspector was going to determine if the vehicle is drivable. 8. The car is under 3 year warranty with extended warranty for 7 years. I want a response from Subaru of America states that the Crosstrek 2022 is safe to drive and does not have an unintended acceleration issue since Subaru conducted the inspection.

**NHTSA ID Number:** 11675030
**Complaint Date:** July 21, 2025
**Incident Date:** July 21, 2025
**Summary of Complaint**
The contact owns a 2021 Subaru Crosstrek. The contact stated that while his daughter was driving at an undisclosed speed, the vehicle inadvertently lost motive power in the middle of the roadway. The contact stated that several unknown warning lights were illuminated. The vehicle was towed to the dealer, who diagnosed a failure with the battery. The vehicle was repaired, but the failure reoccurred. The vehicle was towed to the dealer and diagnosed with head gasket failure. The vehicle was not repaired. The manufacturer was notified of the failure, a case was opened, and the contact was referred to the NHTSA Hotline for assistance. The failure mileage was 120,000.

**NHTSA ID Number:** 11675423
**Complaint Date:** July 22, 2025
**Incident Date:** July 22, 2025
**Summary of Complaint**
The contact owns a 2022 Subaru Crosstrek. The contact stated that the vehicle was difficult to start and was jumpstarted several times by a dealer's mobile technician. The vehicle was taken to an unknown dealer, where it was determined that the battery was in good condition, and the failure could be related to the manual transmission. The vehicle was not repaired. Additionally, the contact stated that a AAA technician who assisted in jumpstarting the vehicle confirmed that the alternator and the battery were in good condition. The technician informed the contact that the vehicle was experiencing a parasitic battery drain; however, the cause of the failure could not be determined. The vehicle was not repaired. The manufacturer was notified of the failure. The failure mileage was approximately 34,000.

**NHTSA ID Number:** 11683547
**Complaint Date:** August 27, 2025
**Incident Date:** March 1, 2022
**Summary of Complaint**
Vehicle had a parasitic draw, was in the shop for an extended amount of time, I believe wiring issues were caused from this as well, I had to replace my driver side window switch, buy an optima battery, and drive 3.5hrs to a Subaru dealership in the middle of the winter hoping I'd make it safely and without stalling, the DCM was found to be at fault similarly to other vehicle owners included in another recall

that somehow excluded 2019 Crosstrek drivers and included other MY variants such as the Outback and Forester of which also had a bulletin posted about this parasitic draw and how to go about warrantying the costs associated with the repair. I incurred many costs travelling, horrible gas mileage during this time, and a battery replacement. Additionally I lost My workstudy position the following semester due to the unstable vehicle issues and attendance concerns when shuttling the car to the dealer for these warranty repairs (if even covered at all)

**NHTSA ID Number:** 11684982
**Complaint Date:** September 4, 2025
**Incident Date:** January 10, 2025
**Summary of Complaint**
Subaru owners have reported experiencing premature parasitic battery drain in vehicles equipped with Starlink in-vehicle technology. The defect presents itself when the equipped data communications module (DCM) attempts to communicate with 3G cellular networks. As 3G networks within the U.S. are no longer functioning, the call will continuously fail even after the vehicle has been turned off, draining the battery and resulting in a no-start safety risk for drivers. According to those familiar with the issue, the only solution to the battery drain defect is to remove the DCM fuse, thus disabling vital safety features such as hands-free calling. This issue is happening to me specifically, as I have had to jump my car multiple times within a week long period if in a bad cell range area. I have brought this into the dealership multiple times, under warranty, and presented this to them. They refuse to fix, even though multiple online threads and lawsuits point to this issue being known.

**NHTSA ID Number:** 11694055
**Complaint Date:** October 17, 2025
**Incident Date:** October 17, 2025
**Summary of Complaint**
The contact owns a 2021 Subaru Crosstrek. The contact stated while driving at various speeds, the steering wheel was difficult to turn in either direction. Several unknown warning lights were illuminated. In addition, the contact stated that the vehicle was repaired under an unidentified recall; however, the recall repair failed to prevent a failure. The contact stated that upon further inspection, the vehicle occasionally experienced an abnormal battery energy consumption, although the battery was previously recharged. The local dealer was contacted, but the vehicle was not diagnosed or repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 60,000.

61

**NHTSA ID Number:** 11699058
**Complaint Date:** November 12, 2025
**Incident Date:** November 12, 2025
**Summary of Complaint**

To Whom It May Concern, I am filing a formal dispute and safety complaint regarding my 2022 Subaru Crosstrek Limited. On November 12, 2025, while driving at approximately 70 mph on the highway, the vehicle suddenly stopped operating automatically without warning. This was a terrifying and dangerous event for me and my family. We could have been seriously injured or worse. The service department later claimed that the issue might be related to the battery, but I am not convinced that this explanation is accurate or acceptable. A vehicle with only around 41,000 miles should not suddenly lose power or stop at highway speed. This is a serious safety defect and raises strong concerns about the vehicle's reliability, engineering, and overall safety. I request that Subaru of America open a formal investigation into this incident and document it as part of my ongoing complaints. I also ask that this matter be reviewed under the Florida Lemon Law and BBB Auto Line programs, since this issue demonstrates a clear and dangerous failure of the vehicle's systems that should not occur under normal operation. Please confirm receipt of this dispute and provide a case reference number and next steps for resolution. Sincerely, [XXX] [XXX] 786-718-0305 [XXX] et 2022 Subaru Crosstrek Limited VI [XXX] 29 INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**NHTSA ID Number:** 11716961
**Complaint Date:** February 10, 2026
**Incident Date:** February 6, 2026
**Summary of Complaint**

The contact owns a 2019 Subaru Crosstrek. The contact stated that while driving approximately 60 MPH, the vehicle lost power steering functionality, and the vehicle decelerated and lost drive power. The contact was able to coast to the side of the road, where the vehicle completely shut off and lost power. The vehicle was towed to the dealer and was diagnosed with battery failure. The battery was replaced; however, the following morning, while attempting to start the vehicle, there was no electrical power to the vehicle. The Hybrid System Check error message was displayed. The contact researched and found information related to NHTSA Campaign Number: 23V080000 (Electrical System). The contact stated that there was corrosion on the battery. The vehicle was returned to the dealer, and the contact was informed that the VIN was not included in the recall. The vehicle was not repaired. The manufacturer was informed of the failure and confirmed that the VIN was not included in the recall. The failure mileage was approximately 60,000.

**CROSSTREK HYBRID**

**NHTSA ID Number:** 11431464
**Complaint Date:** September 2, 2021
**Incident Date:** July 22, 2021
**Summary of Complaint**
The vehicle of concern is a 2019 Subaru Crosstrek Plug-in Hybrid (PHEV). In the past 2 to 3 months, we have had multiple warning lights come on when the vehicle is started. In some cases, we were able to clear the warning lights by turning the vehicle off and back on several times over the course of 30-40 minutes. The two most recent occurrences involved the vehicle having to be towed to the dealership as either the car would not shift out of Park or upon shifting out of Park, the parking brake would not release. The car was driven to the Burlington Subaru dealership in Burlington, VT about 5-6 weeks ago where they were unable to reproduce the problem or find any information logged in the vehicle's logs. Two weeks ago (8/19/21), the vehicle was towed to the dealership. The service department was able to log/see the errors (ABS, Check Engine, Eyesight System and Vehicle Dynamic Control) which were also logged in the MySubaru app. The dealership drove the vehicle almost 250 miles in attempts to diagnose the problem further. They upgraded the ECM software and they did not see the problem after that. I picked the vehicle up the morning of 8/30/21 and the problem recurred the evening of 8/30/21 resulting in the 2nd tow back to the dealership. The same errors as before were reported and seen by the dealership. On 9/1/21, I was informed by the service dept rep the problem was root caused to be a faulty electronic parking switch resulting in a drained battery. They are awaiting the new part which is in short supply in the US currently so no reliable ETA. The dealer would like to keep the car an additional couple of days after they receive the part to see if the problem is resolved. The car has approximately 23,000 miles on it currently.

**NHTSA ID Number:** 11717316
**Complaint Date:** February 11, 2026
**Incident Date:** August 1, 2023
**Summary of Complaint**
The contact owns a 2021 Subaru Crosstrek Hybrid. The contact stated that after moving the vehicle 10 feet from a pile of snow in cold weather, the vehicle restarted but failed to run and then shut off after 2 minutes. The contact changed the 12-Volt battery. Several unknown warning lights were illuminated, and the "Service 12-Volt

Battery" message was displayed. The vehicle was towed to the local dealer, where it was diagnosed, and it was determined that the inverter connector was corroded. The wires underneath the vehicle had been damaged due to water, salt, and sand, causing the vehicle to become inoperable. The vehicle was not repaired. The vehicle was previously repaired under NHTSA Campaign Number: 23V0800000 (Electrical System). The vehicle was repaired, but the failure recurred. The manufacturer was contacted and offered partial claim assistance, but the owner declined. The failure mileage was approximately 125,000. The VIN was not available.

## FORESTER

**NHTSA ID Number:** 11730548
**Complaint Date:** April 11, 2026
**Incident Date:** April 3, 2026
**Summary of Complaint**
This vehicle has died 4 times in one week. when this happens, multiple lights have flashed in the dash board, including the "eye sight" warning. Then, it would not restart but continued to "turn over" when the ignition button was pushed. One instance was on a busy street at a stop light, another at a busy intersection in the inner left turn lane, the other 2 instances were in parking lots. The first 2 times the vehicle was able to be jump started and was not taken to the dealership. The 3rd, it was jump started and taken to the dealership. They said the battery was slightly low, but had sufficient charge. They changed the fob battery, and topped off the car battery. That was all. The next day was the episode where it died in the turn lane. I had it towed to the dealership. This time they changed the battery to a more high capacity battery, and admitted that these vehicles have a battery put in them at the manufacturer that is not strong enough for the systems it runs. I even found a service bulletin about it online, #TSB 07-218-23R. This should be a recall item, and they should have changed this battery at my first visit! A vehicle suddenly dying on a busy roadway puts those inside at risk, as well as everyone around them. Very disappointed in this 2023 Subaru Forester Premium.

**NHTSA ID Number:** 11426384
**Complaint Date:** July 25, 2021
**Incident Date:** July 25, 2021
**Summary of Complaint**
I parked in the parking lot yesterday afternoon. But when I try to start my car this morning, the battery dead ! I just bought this new Subaru three months with 5000 miles. Very disappointed.

**NHTSA ID Number:** 11429155
**Complaint Date:** August 15, 2021
**Incident Date:** August 15, 2021
**Summary of Complaint**
The batteries drained overnight 3 times within 7 months after the purchase of the new vehicle. Battery was jumped each time by Subaru Roadside Assistant. The dealer checked the battery and it was fine. It is the electrical (CAN) problem that drained the battery.

**NHTSA ID Number:** 11442252
**Complaint Date:** December 1, 2021
**Incident Date:** November 30, 2021
**Summary of Complaint**
Several instances of parasitic drain of the battery resulting in vehicle not being able to be started without a jump. Nothing was left on in the vehicle. Each time it was parked with the alarm set for approx 3-4 hours. The battery was completely dead. This vehicle is only 8 months old and this has happened around 8-9 times. Dealer does nothing about it except to charge the battery. This is unacceptable.

**NHTSA ID Number:** 11489004
**Complaint Date:** October 12, 2022
**Incident Date:** October 7, 2022
**Summary of Complaint**
When I bought my car I was assured that it was impossible to lock the keys inside the car. Typically I put my dog in a special car harness and buckle him into the middle of the back seat. He's 77 lbs. and tall. It's a bit of a project to get him all set. I'm leaning over and all my stuff is hanging off of me so I drop my purse onto the floor of the back seat and put the car keys on the console between the two front seats so I can more comfortably deal with him. I do this from the right side of the car as the child car seat is on the left side. Once he's buckled in I close the door and walk around to the driver's side and get in. On Oct. 7th I had taken him to a park to play. The temps were in the 80s and my car was parked in the sun. He's a Bernedoodle and does not handle heat very well. I buckled him in as usual from the right side and also put the keys on the console as usual. Then I closed the door. CLICK! Uh-oh! All the doors automatically locked! With the car in the sun and the outside temps in the 80s I can only guess that the inside temp had to be well over 100. I almost panicked. I thought of calling the police, but here in Portland they are slow to respond if they even respond at all. I banged on all the windows and thought of finding a rock to break one open. Then I remembered that I hadn't tried the back lift up door as it's an SUV. Thankfully it opened. But I had to crawl in over all my stuff

in the back, over my tall, 77 lb. dog, and stretch out to reach my keys on the console in the front. Then I had to back out. This was not easy; I'm in my 70s. I shouldn't have to do that! So [XXX] was okay in the end. What if it had been my two year old granddaughter? What if the back didn't open like the side doors didn't? It shouldn't be that way. I called Subaru and they said they never heard of that happening. They said there was a lock setting but I couldn't find it. They said the fob battery could be low but there was no warning. I'm bringing the car in. INFORMATION Redacted PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

**NHTSA ID Number:** 11497251
**Complaint Date:** December 13, 2022
**Incident Date:** August 20, 2022
**Summary of Complaint**
The battery was completely discharged overnight when the car was only 4 months old. We had a flatbed tow to a dealer who charged the battery and performed tests which all checked out ok. Said we weren't driving the car often enough. This same battery discharge happened 3 more times, approximately 30 days apart each time. August 20 was the first time, September 19, October 13 and November 16, all in 2022. Car was purchased new in April 2022. Took it into the dealership where we bought it; they did tests also saying everything was ok, not being driven enough. The 4th time the overnight discharge happened was about a week after our dealership tested it. Every time this has happened the car was driven the previous day. Car is driven 4-5 times a week for local errands. Currently has 1,100 miles and is 8 months old. We are senior citizens and need a dependable car.

**NHTSA ID Number:** 11568075
**Complaint Date:** January 26, 2024
**Incident Date:** January 1, 2024
**Summary of Complaint**
The vehicles battery does not hold a charge during short term, (3-5 weeks of storage). I understand that some prior years of Subaru vehicles have this same problem and there is currently a recall for this. I wonder if this battery problem exists in newer Subaru Foresters. When we purchased this vehicle as new we observed that the Dealership was having problems maintaining the charge on at least two other new Forester vehicles on display and had to replace the battery in one of these to start the vehicle and show it to other customers. We have had to have Triple A, (AAA), visit our home and jump start our 2023 Forester at least three times. We do not use the vehicle much and there is less than 1000 miles on our auto. The auto is stored in the off condition. No warning messages of lamps show the depleted battery conditions

until trying to start the vehicle. We have recently, week of 1/15-22/2023, replaced the battery the auto came with and put in a new Diehard battery. We have photos of the old battery.

**NHTSA ID Number:** 11592408
**Complaint Date:** June 4, 2024
**Incident Date:** May 21, 2024
**Summary of Complaint**
At 7:30 am on 21May2024 I came out to find the car was dead, no electrical power at all, it would not start. I called Subaru customer service and arranged to have the battery jumped. When the tow driver tried to start the car, my car drained his battery in about 30 seconds. Because of the way my car was parked, the flatbed tow truck could not reach the car & I had to arrange for another truck to come pick up the car. That happened Thursday 23May2024 because my Subaru dealer did not have a loaner car available til then. That tow driver was able to start the car and said it was ok to drive it to the dealer if I didn't turn it off. So I started out and 1/2 mile from my house the battery died again & I had to arrange for another tow. Once I got the car to the dealer and they had a chance to check it out, I got a call about what was wrong. They said the battery was dead and a diagnostic test had confirmed that there was nothing in the car draining the battery, it was just dead and would need to be replaced. When I went to pick up the car and asked for a more detailed explanation of why a 2-year-old car's battery would suddenly just die, I was told that the battery didn't have enough amps for the needs of the car and they put in a battery with more amps (See attached service record). They also mentioned that Subaru was aware of this battery problem and there had been a class action settlement, but that my 2022 Forester was not covered by this settlement. I don't know if the old battery is available for inspection but this incident put me and others at risk when the car died in the middle of the road. My hazard flashers didn't work so there was no safe way to alert oncoming drivers of the hazard in the road. There were no warning lamps, messages or other symptoms of the problem before I found the dead battery Tuesday morning, or when it died on the road Thursday morning.

**NHTSA ID Number:** 11635323
**Complaint Date:** January 10, 2025
**Incident Date:** December 14, 2024
**Summary of Complaint**
12/14/24-I was stopped at a red light at a VERY busy intersection. The engine was in stop mode by the start/stop feature. When the light turned green, the car failed to start. The entire car shut down, with alarms sounding and dash lights flashing. The entire system had to reboot before I could restart the car. It was a freighting

experience. Fortunately, I wasn't killed by traffic zooming by or by some person with road rage. 12/16/24-Issue evaluated by local Subaru dealer. Their evaluation was that when the auto start feature was activated, my car battery was too low to work. There was zero warning about a low battery before this failure in traffic. I had to buy a new battery. The auto start/stop feature is not an enhancement, but a safety hazard. Owners should be able to permanently disable this unnecessary drain on batteries and starters. I did a search, and there are plenty of others that experienced similar issues with their Subarus.

**NHTSA ID Number:** 11635534
**Complaint Date:** January 12, 2025
**Incident Date:** January 7, 2025
**Summary of Complaint**
MY 2021 Subaru Forester battery has died twice in the last 10 months. I could not jump start the vehicle the first time about 10 months ago. I needed AAA to jump start it. I took the car to the dealer; they recharged the vehicle and said the battery was fine. They did not bill me. The car died again this week. This time I was able to jump start the vehicle myself. The safety issue is I might need to get to a doctor's appointment or other emergency in a hurry. I may be out shopping or hiking and need to return home, perhaps in bad weather. I might be stranded in a busy intersection or a lonely country road. The battery is simply not trust-worthy. The vehicle was inspected by the dealer, and they said the battery was fine. There was no warning lamp before the battery failed. The car is not safe-I don't know when it won't work.

**NHTSA ID Number:** 11637465
**Complaint Date:** January 21, 2025
**Incident Date:** January 5, 2025
**Summary of Complaint**
I was stopped at a red light when, suddenly, my car engine completely shut down, a loud and high-pitched alarm began to squeal and many alerts flashed on my screen. one of the alerts stated that the eye--sight was not functioning.The car would not move when the traffic light turned green and I applied the gas pedal. Cars behind me and those in oncoming traffic had to swerve around me. I was in the center lane of traffic. Fortunately, I was able to put the emergency blinkers on. The traffic light turned red again. It occurred to me to shift into park and attempt to restart the car. The car did restart and I was able to drive home when the traffic light again turned green. I made an appointment to take the car into Concordville Subaru and, there, I was told that the battery was low and I was given a new battery since the car is under warranty. I am reading from other owners that this is a temporary fix only and that

it does not address the real problem.

**NHTSA ID Number:** 11638961
**Complaint Date:** January 27, 2025
**Incident Date:** January 27, 2025
**Summary of Complaint**
The battery is getting drained by the car's system

**NHTSA ID Number:** 11644500
**Complaint Date:** February 24, 2025
**Incident Date:** December 17, 2024
**Summary of Complaint**
My dealer diagnosed issues with my car as: the gasket around my sunroof failed and allowed water to infiltrate the cabin and the electrical system over time. This caused corrosion in the electrical harness, which caused battery failure, failure of the adaptive headlight system, and random electrical glitches. My interpretation of their diagnosis was that this was a cascading failure that might have led to problems with other electrical components such as power brakes, other adaptive systems, etc., and affected safety, if it had not been diagnosed in time. An insurance appraiser confirmed the dealer's diagnosis. Repairs (including replacing the electrical harness) have been completed and so the situation is not available for further inspection. When the adaptive headlight system stopped working, this was reported on the dashboard, but the cause of this and the base problem was not.

**NHTSA ID Number:** 11657516
**Complaint Date:** April 29, 2025
**Incident Date:** April 4, 2025
**Summary of Complaint**
Currently suspected that the vehicle battery was installed incorrectly during assembly. Engine fire started at the battery wiring and vehicle was a total liss

**NHTSA ID Number:** 11659879
**Complaint Date:** May 9, 2025
**Incident Date:** May 8, 2025
**Summary of Complaint**
Automatic stop activated at traffic light. When the brake was disengaged, the star would not start. The occupant was stalled at the traffic light during rush hour in a thunderstorm with limited visibility for approximately 15 minutes. Winter Haven Police Department was dispatched but did not arrive probably due to other weather-related traffic situations. After that time, the engine did start and was moved into a

lot without incident. The good Samaritan that assisted stated he had just stopped down the street on another disabled vehicle in traffic due to malfunctioning auto stop/start. Here is the issue. The alternator and battery have both been checked twice and were in proper order. The OE battery was in use. There was no warning to indicate any issue with the batter. In fact, the Subaru app was reporting the vehicle was operating normally while the vehicle was dead in the road. I work with a local law enforcement agency and have worked fatal crashes on that road. It is unacceptable for the vehicle to not have some type of redundant system to warn owners that the vehicle battery is failing before they are thrust into a possible deadly roadway breakdown.

**NHTSA ID Number:** 11663239
**Complaint Date:** May 27, 2025
**Incident Date:** May 27, 2025
**Summary of Complaint**
Without any prior issue of having the engine turnover from being parked for more than 20 hours, the car would not start. It's like the battery completely died overnight. I was able to unlock it but the car would not start, and therefore was unable to go into neutral because I didn't have a long enough screwdriver with me to manually override into neutral. So it had to be jumped partially to be towed (had it towed for more than just the battery because it's under warranty). The interesting part is that my car has a factory issued battery, and my car was the third Subaru made after 2020 that had to be towed due to the same issue, in the same day. Maybe the batteries are defective? Regardless, since everything relies on power now, having a provided device to allow for manual override would prevent folks from being stranded. I tried using my key AND the screwdriver that comes with the spare tire. Both were to short.

**NHTSA ID Number:** 11666612
**Complaint Date:** June 12, 2025
**Incident Date:** May 31, 2025
**Summary of Complaint**
My vehicle is equipped with automatic start/stop system. In early 2024, I began having issues with sluggish restart during the start/stop cycle. I took it into the dealer at that time, who stated it required a software update and charged the battery. The issue persisted. It was more serious, as it was not just sluggish on the restart, but the restart would fail and stall the car. This happened in heavy traffic, which was very scary and unsafe. I took the vehicle back into the dealer in late 2024 for the same issue. They did another software update and charged the battery again. They recommended that we purchase a new battery. One month later, we purchased an

70

upgraded AGM battery, as it was recommended for auto start/stop systems. The issue continued to persist. First, with sluggish restart. Later, the auto start/stop system failed again in heavy traffic. We took the vehicle in again, and again the dealer stated it was the battery. They recommended we purchase a new battery. It was explained the battery was 6 months old, and the issue has never been fixed. Further, it was pointed out that the car could be restarted manually with the push button ignition, after a start/stop system failure. That led us to believe it was not a battery failure, but a deeper system failure. The dealer continues to assert it is the battery, even though it happened with a factory battery and a new, upgraded, battery. Neither of the batteries have failed testing, and report as "good" on the diagnosis forms. We believe there is a system issue, that is causing issues with the auto start/stop system, and is not being identified by the dealer. It is a safety issue, as it has happened in heavy traffic several times. We have attached diagnostic reports from March 2024 and June 2025, but cannot find the October 2024 diagnostic report.

**NHTSA ID Number:** 11669728
**Complaint Date:** June 27, 2025
**Incident Date:** June 27, 2022
**Summary of Complaint**
The Auto-Stop/Start feature frequently fails to properly restart the car, often causing the car to stall during the restarting process, leaving me effectively disabled on a busy road. The battery has already been replaced once.

**NHTSA ID Number:** 11686115
**Complaint Date:** September 9, 2025
**Incident Date:** August 24, 2025
**Summary of Complaint**
I am writing to report a serious safety concern involving my '22 Subaru Forester, which is equipped with the Auto Start/Stop feature. This issue created a dangerous driving situation that could have resulted in severe injury or death to myself, my family, or other drivers on the road. While driving on the highway, our Forester's Auto Start/Stop system malfunctioned causing the engine to shut off completely while the vehicle. Specifically, the vehicle shut down in the left lane of traffic and failed to restart immediately leaving us unexpectedly immobile. Fortunately, my husband remained calm and immediately placed his foot back on the brake, placed the vehicle in park and restarted the vehicle manually by pressing the ignition button. However, had he hesitated during the confusion by not placing his foot back on the brake we could have been rear-ended, possibly by a large semi-truck which would have propelled us into the vehicle in front of us. Our dealer said the Auto Start/Stop system failing to restart the vehicle due to a weakening battery—for which there is

71

no warning. The fact that a non-critical feature like fuel-saving Start/Stop is allowed to override the engine's operability based on battery voltage is deeply concerning. Batteries degrade over time. But a degraded battery should not be allowed to disable a moving vehicle.Having spoken directly with Subaru of America about this issue, they acknowledged and documented my case however I was told that it would be used as data for potential future action if other similar cases arise. In the meantime, no corrective action is being taken by Subaru, with me as an owner or proactively with the feature design.I respectfully urge the NHTSA to investigate this matter as a potential safety defect. The Auto Start/Stop system, as implemented in certainSubaru models (specifically the 2022 Forester in my case) may compromise safe vehicle operation when battery voltage drops below a certain threshold which is a safety flaw.

**NHTSA ID Number:** 11695458
**Complaint Date:** October 24, 2025
**Incident Date:** May 19, 2025
**Summary of Complaint**
The contact owns a 2021 Subaru Forester. The contact stated that while stopped at a traffic signal, the vehicle stalled. No warning light was illuminated. The contact was able to restart the vehicle. The contact stated that on a separate occasion, while driving over railroad tracks, the vehicle stalled. No warning light was illuminated. The contact was able to restart the vehicle. The contact continued to drive, and two blocks later, the vehicle stalled. No warning light was illuminated. The contact was able to restart the vehicle. The vehicle was taken to the dealer, where it was diagnosed with battery failure. The battery was replaced. The contact picked up the vehicle, and on the drive back to the residence, the vehicle stalled. The contact stated that the vehicle was almost rear-ended by the vehicle behind. The vehicle was towed to the dealer. The dealer replaced the fuel injectors. The contact picked up the vehicle, and the following day, while driving to work, the vehicle jerked abnormally and the vehicle stalled. The vehicle was towed to the dealer; however, no cause for the failure was found. The vehicle was not repaired. The contact stated that the failure persisted. The manufacturer was not notified of the failure. The failure mileage was approximately 32,000.

**NHTSA ID Number:** 11696842
**Complaint Date:** October 31, 2025
**Incident Date:** October 23, 2025
**Summary of Complaint**
The vehicle has experienced four separate engine shutdowns while stopped in traffic. Each time, the engine turned off unexpectedly, requiring a manual restart. One

incident occurred near a railroad crossing with my child in the car. The vehicle also lurches forward at low speeds and hesitates when accelerating after being stopped. These issues persist despite service visits. I believe they may relate to Technical Service Bulletins regarding the Auto Start/Stop and battery systems (TSBs #16-147-24, #10232217, #07-218-23R, #10251098). Subaru service staff have acknowledged awareness of these problems. I'm submitting this complaint to ensure the safety risk is documented and investigated.

**NHTSA ID Number:** 11714847
**Complaint Date:** February 1, 2026
**Incident Date:** January 6, 2026
**Summary of Complaint**
Car drains battery. 45,000 miles and has had 3 batteries and have been told it needs another. Dealer says start stop switch, requires a battery of 750 CCA and not the Subaru recommend battery. Car will die in traffic and driver seat adjusts to different positions by itself. Told that these problems will never stop unless I get a higher rated battery than required.

## LEGACY

**NHTSA ID Number:** 11435081
**Complaint Date:** October 1, 2021
**Incident Date:** September 29, 2021
**Summary of Complaint**
Battery died completely, left me stranded at a gas station. I had to call and get a jump. I've had the car 9 weeks, it only has 690 miles on it. No warning lights prior, did notice a slightly longer crank a couple days prior. I was told by the dealer that I don't drive enough, and I should keep my key at least 30 feet away when the keys are in the house, because that can silently drain the battery. I had not left any lights on or had done anything to drain the battery prior to this occurring. I drove to the gas station with no problem, upon restarting after getting gas, no power, car was dead. I couldn't even move the shifter knob into neutral.

**NHTSA ID Number:** 11632889
**Complaint Date:** December 28, 2024
**Incident Date:** December 28, 2024
**Summary of Complaint**
Dear NHTSA Team, I am writing to report a recurring and distressing issue with my Subaru Legacy 2021 which I believe raises significant safety concerns. Since purchasing the vehicle, I have experienced consistent problems with the battery.

Despite replacing the battery five times, the vehicle has repeatedly stopped functioning, including a recent incident where it stalled in the middle of the road. This required me to call law enforcement and a towing service, adding considerable mental and financial stress. These unexpected breakdowns are not only inconvenient but also pose serious safety risks to myself and others on the road. I am concerned that this issue may not be isolated and could affect other Subaru owners as well. I kindly request your assistance in investigating this matter to ensure that appropriate actions are taken to address this potential defect. Please let me know if you need additional information, such as detailed records of the incidents, repair history, or communication with Subaru regarding the issue. Thank you for your attention to this matter. I appreciate your efforts in ensuring road safety and protecting vehicle owners. Sincerely, [XXX] [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

103. In addition to the foregoing complaints, Subaru had knowledge of the Defect from NHTSA complaints relating to earlier model years of the Class Vehicles, which as described above, also suffered from parasitic battery drain.

Below is a small sampling of those complaints:

**NHTSA ID Number:** 10853245
**Complaint Date:** April 4, 2016
**Incident Date:** April 4, 2016
**Summary of Complaint**
FORESTER SAT FOR 2 WEEKS AND BATTERY WAS DRAINED COMPLETELY THOUGH NO LIGHTS OR ACCESSORIES WERE LEFT ON. RECHARGED BATTERY, DROVE IT FOR TWO DAYS THEN CAR SAT FOR TWO DAYS. AGAIN BATTERY WAS. COMPLETELY DEAD. VERY DISAPPOINTED AND CONCERNED OVER LACK OF RELIABILITY

**NHTSA ID Number:** 10995726
**Complaint Date:** June 17, 2017
**Incident Date:** June 5, 2017
**Summary of Complaint**
SINCE BUYING IT NEW, THE CAR SEVERAL TIMES HAS FAILED TO START AND HAD TO BE JUMP-STARTED. TWICE TOWED TO DEALER, CHECKED SEVERAL TIMES THERE, NO PROBLEM COULD BE FOUND. THIS HAS HAPPENED A NUMBER OF TIMES (SPORADICALLY, WITH NO

INDICATION AS TO WHY). THE FIRST TIME AT 4,000 MILES, SEVERAL TIMES SINCE AND AGAIN THIS MONTH.

**NHTSA ID Number:** 11058155
**Complaint Date:** January 2, 2018
**Incident Date:** January 2, 2018
**Summary of Complaint**
CAR BATTERY DIES COLD WEATHER. NO WARNING. OBVIOUS DEFECT EITHER BATTERY OR ELECTRICAL DRAINAGE. I NOT ONLY OWNER WITH PROBLEM. ON LINE MANY COMPLAINTS WITH BATTERY DYING AND LEAVING ONE STRANDED COLD WEATHER. SUBARU AND DEALER KNOW OF DEFECT WILL NOT WARRANTY PROBLEM. TWICE STUCK WHEN CAR PARKED ON STREET AND GARAGE. WOULDN'T START.

**NHTSA ID Number:** 11062973
**Complaint Date:** January 16, 2018
**Incident Date:** January 15, 2018
**Summary of Complaint**
VEHICLE STARTING BECOMES SLOWER FOR ABOUT 1 WEEK AND THEN IT WILL NOT START AT ALL. I THEN GOT A BOOST FROM A SERVICE GARAGE IN THE FIRST INSTANCE AND DROVE THE CAR TO MY SELLING DEALER 40 KM. AWAY. THEY DID ALL THE TESTING, BATTERY, ALTERNATOR AND IT DID NOT SHOW ANY CODES. THEY ONLY DID DIAGNOSTIC WORK AND NO ACTUAL REPAIRS AND GAVE ME THE PRINT OUT JUST IN CASE IT HAPPENED WHILE WE WERE ON OUR 5 MONTH VACATION IN FLORIDA. THIS HAPPENED AT 25,000 KM ON THE ODOMETER IN SEPTEMBER OF 2017. IT IS NOW JANUARY 15, 2018 AND I AM IN FLORIDA. THE CAR HAS 33,000 KM. ON IT THE EXACT SAME THING HAPPENED, WITH A SLOW TO TURN OVER FOR ABOUT 1 WEEK AND THEN FAILURE TO START. I TESTED THE BATTERY WITH A LOAD TESTER AND IT TESTED AS "BAD" ON THE GUAGE. WE THEN BOOSTED IT TO START AND TESTED THE VOLTAGE FROM THE ALTERNATOR WHICH WAS 14 VOLTS AND THE BATTERY TESTED 12 VOLTS. AFTER A FEW MINUTES OF RUN TIME WE TURNED IT OFF AND IT FAILED TO START AGAIN. AFTER BOOSTING AGAIN I DROVE IT LESS THAN 1 MILE TO MY HOUSE AND LET IT RUN WHILE I CALLED THE ROADSIDE ASSIST AND GOT THE PHONE NUMBER OF THE NEAREST SUBARU DEALER, WHO INFORMED ME THAT ROADSIDE ASSIST WOULD BRING IT TO THE DEALERSHIP AND THEY WOULD TEST IT. IF

THE BATTERY WAS BAD THEN THEY WOULD REPLACE IT. AFTER 15 MINUTES I RETURNED TO MY CAR IN THE DRIVEWAY AND TURNED IT OFF. I THEN ATTEMPTED TO START IT SEVERAL TIMES AND EVERY TIME IT STARTED CORRECTLY. MY WIFE THEN DROVE IT 15 KM. TO GET GROCERIES AND IT RESTARTED EVERY TIME THAT SHE LEFT THE STORES. I THEN DID ANOTHER LOAD TEST ON THE BATTERY AND THE NEEDLE NEVER WAVERED FROM THE GREEN AREA OF THE GUAGE. IT LEAVES YOU WONDERING WHEN YOU WILL BE STRANDED IN THE WILDERNESS OR THE SIDE OF AN INTERSTATE HIGHWAY. THANK YOU FOR ANY HELP THAT YOU MAY OFFER.

**NHTSA ID Number:** 11150103
**Complaint Date:** November 8, 2018
**Incident Date:** November 7, 2018
**Summary of Complaint**
I WAS TRAPPED INSIDE MY VEHICLE WHEN THE BATTERY DIED. WHILE SITTING IN MY CAR USING THE ACCESSORIES TO CHARGE MY PHONE, THE CAR BATTERY DIED AND I WAS UNABLE TO UNLOCK THE DOORS TO GET OUT. THE KEY FOB DID NOT WORK EITHER. THERE IS NO INSIDE HANDLE ON THE REAR HATCH. THE DASHBOARD LIGHTS FLICKERED A COUPLE TIMES AND AFTER ABOUT THREE MINUTES THE DOOR DID UNLOCK. WHAT IF THE BATTERY WAS COMPLETELY DEAD? WHAT IF I DID NOT HAVE ACCESS TO A CELL PHONE AND IT WAS COLD TEMPERATURES? I DO NOT THINK I WOULD BE STRONG ENOUGH TO KICK OUT THE WINDOWS. I AM CONCERNED AND HOPE YOU WILL INVESTIGATE. THANK YOU.

**NHTSA ID Number:** 11185059
**Complaint Date:** March 8, 2019
**Incident Date:** March 1, 2019
**Summary of Complaint**
DEAD BATTERY IF THE CARS SITS PARKED 2 DAYS. NOTHING LEFT ON, IT IS A PARASITIC BATTERY DRAIN. HAPPENED TWICE AND BATTERY WAS TOTALLY DEAD EACH TIME, NEEDING TO BE FULLY RECHARGED AS IT WOULDN'T TAKE A JUMP. LESS THAN 2000 MILES ON THE CAR.

**NHTSA ID Number:** 11254696
**Complaint Date:** September 11, 2019
**Incident Date:** September 10, 2019
**Summary of Complaint**

76

BATTERY DEAD SEVERAL TIMES. HAVE HAD TO HAVE IT JUMPED SIX TIMES. BATTERY REPLACED BY DEALER ONCE. I NOTE THAT MANY SUBARU OWNERS HAVE SIMILAR PROBLEM.

**NHTSA ID Number:** 11306550
**Complaint Date:** February 2, 2020
**Incident Date:** February 2, 2020
**Summary of Complaint**
MY 2019 ASCENT WAS PARKED IN GARAGE OVERNIGHT. WENT OUT TO CAR AND FOUND REAR TAILGATE WOULD NOT OPEN AND CAR WOULD NOT START. BATTERY WAS DEAD. JUMPSTARTED CAR AND DROVE IT TO THE STORE. WHEN I PARKED THE CAR IT WENT DEAD, CAR WOULD NOT RESTART, AND WOULD NOT LOCK, TAILGATE WOULD NOT OPEN. HAD TO GET ROADSIDE SERVICE TO COME OUT AND START CAR. TOOK CAR TO DEALER AND THEY SAID THEY COULD NOT FIND ANYTHING WRONG BUT DID REPLACE THE BATTERY. SEVERAL WEEKS LATER WHILE CAR WAS PARKED AND LOCKED IN A STORE PARKING LOT I CAME OUT AND FOUND THE REAR TAILGATE OPEN. NO ONE HAD PUSHED THE REMOTE TO OPEN THE TAILGATE? TODAY I FOUND THE CAR PARKED IN THE GARAGE AND THE TAILGATE WOULD NOT OPEN, THE CAR WOULD NOT START, AND THE BATTERY WAS DEAD AGAIN. I COULD FIND NO REASON FOR THE BATTERY TO BE DEAD AGAIN. THE CAR HAD BEEN DRIVEN NORMALLY AROUND TOWN FOR THE LAST FEW DAYS. IT WAS PARKED IN THE GARAGE. ALL THE DOORS WERE SHUT AND NO LIGHTS HAD BEEN LEFT ON. THE CAR WAS PURCHASED IN JUNE 2019 AND HAS LESS THAN 6000 MILES ON IT PLUS THIS IS A NEW BATTERY. I AM CONCERNED ABOUT DRIVING THE CAR AND BEING LEFT ON THE ROAD BY A DEAD BATTERY OR COMING OUT AND FINDING THE REAR TAILGATE OPEN IN A PARKING LOT.

104. In addition to being on notice of the Defect through NHTSA and other complaints, Subaru also directly learned of the vehicle battery problems from its network of dealerships. Many of the customers who wrote online or to Subaru about their negative experiences with the Defect reported having taken their Class Vehicles into Subaru dealerships because of the Defect.

105.  Further, Subaru itself has seen a significant increase in warranty claims relating to batteries, starting as early as 2015 or 2016, long before the Class Vehicles were available for purchase.

106. Despite its knowledge of the Electrical System Sleep-State Defect, Subaru failed to disclose it to Plaintiffs and other Class Members.

107. As a consequence of Subaru's actions and inaction, Class Vehicle owners have been deprived of the benefit of their bargain, lost use of their Class Vehicles for extended periods of time, been exposed to dangerous conditions from being left stranded, and incurred lost time and out-of-pocket costs, including from payments for (1) alternative means of transportation such as rideshares or rental cars, (2) roadside assistance to tow or jump start their cars, and (3) equipment to charge, attempt to preserve, or jump start their vehicle batteries. Class Vehicles also have suffered a diminution in value due to the Defect.

108.  Had Plaintiffs and Class Members known about the Defect, they would not have purchased or leased their Class Vehicles or would have paid significantly less for them.

**TOLLING OF STATUTES OF LIMITATION**

109.  Subaru's knowing and active concealment and denial of the facts alleged herein have tolled any applicable statutes of limitations. Plaintiffs and Class Members could not have reasonably discovered the true facts regarding the Class

Vehicles, including the latently defective nature of vehicles' battery systems until shortly before this litigation commenced.

110. Even after Plaintiffs and Class Members contacted Subaru and/or its authorized dealers for vehicle repairs or battery replacement as a result of the Defect, Subaru routinely informed its customers that Class Vehicles are not defective, that the batteries were functioning normally, and that the batteries simply needed to be recharged.

111. Subaru was and remains under a continuing duty to disclose to Plaintiffs and Class Members the true facts concerning the Class Vehicles, i.e. that the Class Vehicles' electrical systems suffer from a Defect that causes the batteries to fail prematurely, and that the existence of the Defect diminishes the intrinsic and resale value of the Class Vehicles and costs consumers an increased expense to replace or jump start the batteries in their Class Vehicles far more frequently than normal. As a result of Subaru's active concealment of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### CLASS ACTION ALLEGATIONS

112. This action is brought and may be maintained as a class action, pursuant to Rules 23(a), (b)(2), (b)(3) and/or (c)(4) of the Federal Rules of Civil Procedure.

113. The Nationwide Class is defined as follows:

> All persons in the United States who bought or leased, other than for resale, a Class Vehicle.

114.  In addition, state classes are defined as follows:

**<u>New Jersey Class</u>**
All persons who bought or leased, other than for resale, a Class Vehicle in the state of New Jersey.

**<u>California Class</u>**
All persons who bought or leased, other than for resale, a Class Vehicle in the state of California for primarily personal, family or household purposes.

**<u>New York Class</u>**
All persons who bought or leased, other than for resale, a Class Vehicle in the state of New York.

**<u>Texas Class</u>**
All persons who bought or leased, other than for resale, a Class Vehicle in the state of Texas.

115.  Together, the different classes are referred to as the "Class." Excluded from the Class are Subaru, its affiliates, employees, officers and directors; persons or entities that purchased the Class Vehicles for resale; and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the class definitions in light of discovery and/or further investigation.

116.  **<u>Numerosity</u>**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, as such information is in the sole possession of Subaru and is obtainable by Plaintiffs only through the discovery process, publicly available sales information shows that Subaru sold or leased hundreds of thousands of each

model of Class Vehicles nationwide during the class period. Members of the Class can be readily identified based upon, *inter alia*, the records (including databases, e-mails, and dealership records and files) maintained by Subaru in connection with its sales and leases of Class Vehicles.

117. **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class and predominate over any individual questions. These common legal and factual questions include, but are not limited to:

      a.     whether Subaru engaged in the conduct alleged herein;

      b.     whether Class Vehicles are unfit for their ordinary purpose;

      c.     whether Subaru placed Class Vehicles into the stream of commerce in the United States with knowledge of the Defect;

      d.     whether Subaru knew or should have known of the Defect, and if so, for how long;

      e.     when Subaru became aware of the Defect in the Class Vehicles;

      f.     whether Subaru knowingly failed to disclose the existence and cause of the Defect in the Class Vehicles;

      g.     whether Subaru's conduct alleged herein violates consumer protection laws, warranty laws, and other laws as asserted herein;

      h.     whether Plaintiffs and Class Members overpaid for their Class

Vehicles as a result of the Defect;

i.      whether Plaintiffs and Class Members have suffered an ascertainable loss as a result of their loss of their Class Vehicles' features and functionality;

j.      whether Plaintiffs and Class Members are entitled to damages, including punitive damages, as a result of Subaru's conduct alleged herein, and if so, the amount or proper measure of those damages; and

k.      whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

118. **Typicality**: Plaintiffs' claims are typical of the claims of the Class because the Plaintiffs purchased or leased a Class Vehicle containing the Defect, as did each member of the Class. Plaintiffs and Class Members sustained economic harm in the same manner by Subaru's uniform course of conduct alleged herein. Plaintiffs and Class Members have the same or similar claims against Subaru relating to the conduct alleged herein, and the same conduct on the part of Subaru gives rise to all the claims for relief.

119. **Adequacy**: Plaintiffs are adequate representatives of the Class, whose interests do not conflict with those of any other Class Member. Plaintiffs have retained counsel competent and experienced in complex class action litigation— including consumer warranty and automobile defect class actions—who intend to

prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

120. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of these claims, including from the need for expert witness testimony on highly technical and economic issues bound up with the claims. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

121. **Injunctive Relief**: Subaru has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class or, Alternatively, the State Classes)**

122. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

83

123. Plaintiffs bring this claim individually and on behalf of the Class under New Jersey law. Alternatively, Plaintiffs bring this claim individually and on behalf of their respective state classes under the laws of their respective home states.

124. Subaru is a "merchant" as defined under the UCC.

125. The Class Vehicles are "goods" as defined under the UCC.

126. A warranty that the Class Vehicles were in merchantable quality and condition arises by operation of law with respect to transactions for the purchase and lease of Class Vehicles. Subaru impliedly warranted that the Class Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and the absence of material defects, and that the vehicles would pass without objection in the automotive trade.

127. The Class Vehicles, when sold and leased, and at all times thereafter, were not in merchantable condition or fit for the ordinary purpose for which vehicles are used. The Class Vehicles were not merchantable in that the Defect renders the vehicle completely inoperable, which may also leave drivers and passengers stranded, unexpectedly, in perilous locations. The Defect therefore renders the Class Vehicles unfit to provide safe and reliable transportation.

128. The Defect was present in the Class Vehicles when they were placed into the stream of commerce and inevitably manifests well before the end of the useful life of the vehicles' battery system.

129. Subaru was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, directly to Subaru and its authorized dealers, class members taking their vehicle to its dealers, Plaintiffs' demand letters, and the instant lawsuit.

130. Plaintiffs and the other Class Members have had sufficient direct dealings with either Subaru or its agents, including its authorized dealerships, to establish privity of contract between Subaru on the one hand and Plaintiffs and each Class Member on the other hand. Subaru directly communicated with Plaintiffs and Class Members through its agents, including its authorized dealerships, during the sales process. In addition, Subaru directly communicated with Plaintiffs and Class Members via its television, print, and online advertisements. Subaru also provided it warranties directly to Plaintiffs and Class Members. Plaintiffs and other Class Members relied on Subaru's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Subaru vehicles in making their purchasing decision.

131. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Subaru to limit its warranties in a manner that would exclude or limit coverage for the Defect would be unconscionable. Subaru's warranties were adhesive and did not permit negotiations. Subaru possessed superior and exclusive knowledge of the Defect, which is a latent defect, prior to offering

Class Vehicles for sale. Subaru concealed and did not disclose this Defect, and Subaru did not remedy the Defect prior to sale (or afterward).

132. As a direct and proximate result of the breach of these warranties, Plaintiffs and Class Members were injured and are entitled to damages.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class or, Alternatively, the State Classes)**

133. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

134. Plaintiffs bring this claim individually and on behalf of the Class under New Jersey law. Alternatively, Plaintiffs bring this claim individually and on behalf of their respective state classes under the laws of their respective home states.

135. Subaru is a "merchant" as defined under the Uniform Commercial Code (UCC).

136. The Class Vehicles are "goods" as defined under the UCC.

137. Subaru provides a Limited Warranty with every Class Vehicle that expressly warrants that Subaru will repair any defects in materials and/or workmanship free of charge during the applicable warranty period. The Defect is a defect in material and/or workmanship and therefore should have been repaired for free under the Limited Warranty.

138. Subaru also sells extended warranty plans providing additional warranty

86

coverage of the Class Vehicles' electrical systems. Because the Defect is a material and/or workmanship defect in the vehicles' electrical systems, the Defect should have been repaired for free under these warranty plans.

139. Subaru breached its written warranties by failing to provide an adequate repair when Plaintiffs and the Class Members presented their Class Vehicles to authorized Subaru dealers following manifestation of the Defect. Despite its knowledge that Plaintiffs' and class members' vehicles were exhibiting the symptoms of the Defect, instead of providing an effective repair, Subaru claimed that the batteries were performing normally and told customers to avoid driving short distances. When Subaru did agree to provide service under the relevant warranty, it merely replaced the battery, thereby failing to address the underlying defect in material and/or workmanship in the Class Vehicles.

140. Subaru failed to perform its written warranty obligations as part of a uniform pattern and practice that extended to all of its dealerships.

141. The warranties formed the basis of the bargain that was reached when Plaintiffs and Class Members purchased or leased their Class Vehicles. Plaintiffs and Class Members experienced the Defect within the warranty period. Despite the existence of the express warranty and multiple repair attempts, Subaru failed to inform Plaintiffs and Class Members of the Defect and failed to adequately repair the Defect.

142. Plaintiffs and the other Class Members have had sufficient direct dealings with either Subaru or its agents, including its authorized dealerships, to establish privity of contract between Subaru on the one hand and Plaintiffs and each Class Member on the other hand. Subaru directly communicated with Plaintiffs and Class Members through its agents and dealerships. In addition, Subaru directly communicated with Plaintiffs and Class Members via its television, print, and online advertisements. Subaru also issued vehicle warranties directly to Plaintiffs and Class Members. Plaintiffs and other Class Members also relied on Subaru's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Subaru vehicles in making their purchasing decision.

143. As a result of Subaru's breach of its express warranty, Plaintiffs and Class Members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, substantial loss in value and resale value, out-of-pocket expenses to purchase battery chargers and larger batteries, and for maintenance and service expenses to temporarily fix the Defect as well as towing, roadside assistance, and alternative transportation costs that they otherwise would not have incurred but for the Defect.

144. Subaru was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, directly to Subaru and its authorized dealers, Class Members taking their vehicles to its dealers, Plaintiffs'

88

demand letters, and this lawsuit.

145. Plaintiffs and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of Subaru's conduct described herein.

146. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Subaru to limit its express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail of its essential purpose. Plaintiffs and Class Members have presented their Class Vehicles to Subaru's authorized dealers on numerous occasions and Subaru has failed to remedy the Defect. As a result, Plaintiffs and Class Members are left with defective vehicles that do not function as intended and, therefore, have been deprived of the benefit of their bargains.

147. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Subaru to limit its express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. Subaru's warranties were adhesive and did not permit negotiations. Subaru possessed superior knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. Subaru concealed and did not disclose this Defect, and Subaru did not remedy the Defect prior to sale (or afterward).

## COUNT III
### Violations of the Magnuson–Moss Warranty Act ("MMWA")
### 15 U.S.C. §§ 2301–2312
### (On Behalf of the Nationwide Class or, Alternatively, the State Classes)

148. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

149. Plaintiffs bring this claim on behalf of themselves and the Class.

150. Plaintiffs are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

151. Subaru is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

152. The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

153. 15 U.S.C. § 2310(d) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

154. Subaru's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under the MMWA, 15 U.S.C. § 2301(7).

155. Subaru breached its express and implied warranties as described in more detail above. Without limitation, the Class Vehicles contain the Defect that cause the vehicles to be inoperable, which renders the vehicles unfit for their intended use and unsafe. Subaru refused to honor its warranties by repairing or replacing the defective

90

components.

156. Plaintiffs and the other Class Members have had sufficient direct dealings with either Subaru or its agents, including its authorized dealerships, to establish privity of contract between Subaru on the one hand and Plaintiffs and each Class Member on the other hand. Subaru directly communicated with Plaintiffs and Class Members through its agents and dealerships. In addition, Subaru directly communicated with Plaintiffs and Class Members via its television, print, and online advertisements. Subaru also issued vehicle warranties directly to Plaintiffs and Class Members. Plaintiffs and other Class Members also relied on Subaru's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Subaru vehicles in making their purchasing decision.

157. Plaintiffs and Class Members have afforded Subaru a reasonable opportunity to cure its breach of written warranties, and any further opportunity would be unnecessary and futile here as Subaru has failed to remedy the Defect.

158. At the time of sale or lease of each Class Vehicle, Subaru knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but it nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure

under the MMWA and/or afford Subaru a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

159. Plaintiffs and the Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Subaru is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class Members have not re-accepted their Class Vehicles by retaining them.

160. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

161. Plaintiffs individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

## COUNT IV
### Violations of the Song-Beverly Consumer Warranty Act
### For Breach of Implied Warranty
### Cal. Civ. Code §§ 1790–1795.8
### (On Behalf of the California Class)

162. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

163. Plaintiff Cusimano brings this claim individually and on behalf of the

92

California Class.

164.  Plaintiff and the California Class members who purchased or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

165.  The class vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

166.  Subaru is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

167. Subaru impliedly warranted to Plaintiff and the California Class members that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

168.  Section 1791.1(a) provides that: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

169. The Defect in the Class Vehicles is present in them when sold and substantially certain to manifest. The Class Vehicles would not pass without objection in the automotive trade because the Defect causes all or substantially all

93

of the vehicles to experience complete battery and power failure and to fail to operate as intended. The Defect thus affects the central functionality of the vehicle and poses a serious safety risk to driver and passenger safety, leading to hundreds of dollars in repair expenses, out-of-pocket costs to purchase battery chargers, and inconvenient service calls.

170. Because the Defect creates an unreasonable risk to driver and passenger safety, and because the Defect causes complete loss of power and inoperability, the Class Vehicles are not fit for the ordinary purposes for which such vehicles are used.

171. Class Vehicles are not adequately labeled because the labeling fails to disclose the Electrical System Sleep-State Defect and does not advise the California Class members of this Defect.

172. Any attempt by Subaru to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to Sections 1792.3 and 1792.4. Those sections of the Civil Code provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state each of the following: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Cal. Civ. Code §

94

1792.4(a). Subaru's attempted implied warranty disclaimer does not conform to these requirements.

173. The Electrical System Sleep-State Defect deprived Plaintiff and the California Class members of the benefit of their bargain and have resulted in Class Vehicles being worth less than what Plaintiffs and other California Class members paid.

174. As a direct and proximate result of Subaru's breach of its implied warranties, Plaintiff Beth Cusimano and California Class members received goods that contain a defect that substantially impairs their value. Plaintiff Cusimano and the California Class members have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

175. Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff Cusimano California Class members are entitled to damages and other legal and equitable relief, including, *inter alia*, benefit-of-the-bargain damages, overpayment or diminution in value of their Class Vehicles, and reasonable attorneys' fees and costs.

### COUNT V
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1 *et seq.* ("NJCFA")**
**(On Behalf of the New Jersey Class)**

176. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

95

177. Plaintiff Selis brings this claim individually and on behalf of the New Jersey Class.

178. Plaintiff Selis, New Jersey Class members, and Subaru are "persons" within the meaning of N.J. Stat. Ann. § 56-8-1(d).

179. Subaru engaged in the "sale" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

180. Subaru's advertisements described herein are "advertisements" within the meaning of N.J. Stat. Ann. § 56:8-1(a).

181. The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

182. Subaru employed unconscionable commercial practices in its advertisement and sale of the Class Vehicles, which are defective. Subaru's practices in connection with its advertisement and sale of the Class Vehicles were unscrupulous and demonstrate a lack of honesty and fair dealing.

183. Subaru engaged in fraudulent and deceptive trade practices, in violation of the NJCFA, by misrepresenting and knowingly concealing the existence of the Defect. Such information was material to a reasonable consumer because, among

96

other things, the Defect renders the vehicle inoperable, forces consumers to incur additional repair expenses, diminishes the value of Class Vehicles, and represents an unreasonable safety risk to consumers.

184. Subaru's material misrepresentations and knowing omissions are highly likely to mislead the public and induce consumers to make misinformed purchases.

185. Subaru owed a duty to disclose material facts about the defective nature of the Class Vehicles because: (1) Subaru had exclusive or superior knowledge of the Class Vehicles' propensity to fail; (2) Subaru knew that Plaintiff Selis and New Jersey Class members were unaware of the Defect in the Class Vehicles; (3) Subaru understood the true facts regarding the Defect in the Class Vehicles, including that they are defective and prone to battery failure, would be important to reasonable prospective buyers of the Class Vehicles; and (4) Subaru made representations regarding the quality and functionality of the Class Vehicles that were misleading, deceptive, and incomplete without the disclosure of the true facts regarding the Defect in the Class Vehicles.

186. The misrepresentations and knowing material omission described above were uniform across the New Jersey Class. All of the advertising, promotional materials, manuals, contained the same material misrepresentations and knowing omissions.

187. The misrepresentations and knowing material omissions were intended

to induce Plaintiff Selis and New Jersey Class members to purchase Class Vehicles. Plaintiff Selis and New Jersey Class members would not have purchased a Class Vehicle, or would have paid less for them, in the absence of Subaru's misrepresentations and knowing material omissions.

188. Plaintiff Selis and New Jersey Class members suffered ascertainable loss as a direct and proximate result of Subaru's unconscionable and deceptive acts and practices. Among other injuries, Plaintiff and New Jersey Class members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

189. As permitted under N.J. Stat. Ann. § 56:8-19, Plaintiff Selis and New Jersey Class members seek trebled damages, appropriate injunctive relief, and reasonable attorney's fees and costs.

**<u>COUNT VI</u>**
**Violations of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750–1785**
**(On Behalf of the California Class)**

190. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

191. Plaintiff Beth Cusimano brings this claim individually and on behalf of the California Class.

192. Plaintiff Beth Cusimano and the members of the California Class are "consumers" as defined under the CLRA. *See* Cal. Civ. Code § 1761(d).

98

193. Subaru is a "person" as defined under the CLRA. *See* Cal. Civ. Code § 1761(c).

194. Class Vehicles are "goods" as defined under the CLRA. *See* Cal. Civ. Code § 1761(a).

195. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

196. Subaru engaged in unfair and deceptive acts in violation of the CLRA by the practices described above and by knowingly and intentionally concealing from Plaintiff Beth Cusimano and the California Class members that the Class Vehicles suffer from the Electrical System Sleep-State Defect (and the costs, risks, and diminished value of the Class Vehicles as a result of this Defect). Subaru's conduct violated at least the following enumerated CLRA provisions:

   a.  Subaru represented that the Class Vehicles have characteristics, uses, or benefits that they do not have, which is in violation of section 1770(a)(5);

   b.  Subaru represented that the Class Vehicles are of a particular standard, quality, or grade when, in fact, they are not, which is in violation of section 1770(a)(7);

   c.  Subaru advertises its Class Vehicles with the intent not to sell them as advertised, which is in violation of section 1770(a)(9);

d.    Subaru represents that its Class Vehicles have been supplied in accordance with a previous representation when they have not, which is in violation of section 1770(a)(16); and

e.    Subaru inserts an unconscionable provision into its warranty in violation of section 1770(a)(19).

197.  Subaru's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and created a serious safety hazard for the public.

198.  Subaru knew, should have known, or was reckless in not knowing that the Class Vehicles were defective, would fail prematurely, and were not suitable for their intended use.

199.  Subaru was under a duty to Plaintiff Beth Cusimano and the California Class members to disclose the defective nature of the Class Vehicles and the Defect because:

a.    Subaru knew of but actively concealed the Defect from Plaintiff and the California Class;

b.    Subaru was in a superior and exclusive position to know the true facts about the Defect, which affects the central functionality of the vehicle and poses safety concerns, and Plaintiffs and the Class members could not reasonably have been expected to discover that the Class Vehicles contained the Defect until it manifested, which Subaru knew; and

c.    Subaru made partial representations regarding the reliability, safety, and quality but suppressed material facts regarding the Defect.

200. The facts that Subaru misrepresented to and concealed from Plaintiff Beth Cusimano and the other California Class members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Class Vehicles or pay a lesser price for them.

201. The Defect poses a serious safety defect and affects the central functionality of a vehicle because it renders the vehicle inoperable.

202. In failing to disclose the material Defect, Subaru has knowingly and intentionally concealed material facts in breach of its duty to disclose.

203. Plaintiff Beth Cusimano and the California Class have suffered injury in fact and actual damages resulting from Subaru's material misrepresentations and omissions, including by paying an inflated purchase price for their Class Vehicles and incurring additional out-of-pocket expenses to deal with the Defect. Had Plaintiff Beth Cusimano and the California Class known about the defective nature of the Class Vehicles and the Defect, they would not have purchased or leased their Class Vehicles or would have paid less in doing so.

204. As a direct and proximate result of Subaru's unfair and deceptive conduct, therefore, Plaintiff Beth Cusimano and the California Class members have been harmed.

205. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Beth Cusimano sent a letter to Subaru notifying it of its CLRA violations and providing them with an

opportunity to correct their business practices. If Subaru does not correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including for actual, restitutionary, and punitive damages under the CLRA.

206. Pursuant to Cal. Civ. Code § 1780(a), Plaintiff Beth Cusimano, individually and on behalf of the California Class, seeks injunctive relief for Subaru's violation of the CLRA.

207. Additionally, pursuant to Cal. Civ. Code §§ 1780 and 1781, Plaintiff Beth Cusimano, individually and on behalf of the California Class, seeks compensatory and punitive damages under the CLRA and to recover their attorneys' fees and costs.

208. Plaintiff Beth Cusimano's CLRA venue declarations are attached as Exhibit "A" to this complaint in accordance with Cal. Civ. Code § 1780(d).

## COUNT VII
### Violations of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200–17210
### (On Behalf of the California Class)

209. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

210. Plaintiff Beth Cusimano brings this claim individually and on behalf of the California Class.

211. The UCL proscribes acts of unfair competition, including "any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Subaru's conduct violates each of these prohibitions.

**Unlawful Conduct**

212.  Subaru's conduct is unlawful, in violation of the UCL, because, as set forth herein, it violates the Song-Beverly Consumer Warranty Act, the MMWA, and the CLRA.

**Unfair Conduct**

213.  Subaru's conduct is unfair because it violated California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. The Defect renders the Class Vehicles completely inoperable.

214. Subaru acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

    a.    Selling Plaintiffs and California Class members defective Class Vehicles;

    b.    Failing to disclose the Defect despite the opportunity to do so in numerous locations that people in the market for a vehicle would be likely to encounter;

    c.    Directing and furnishing replacement parts it knew would not adequately remedy the defect, and repairing defective parts with

103

more defective parts and otherwise failing to adequately remedy the Defect during the warranty period;

d.    Refusing to repair or replace the Class Vehicles when the known Defect manifested outside the warranty period;

e.    Failing to exercise adequate quality control and due diligence over the Class Vehicles before placing them on the market; and

f.    Failing to acknowledge the scope and severity of the Defect, which poses serious safety concerns, refusing to acknowledge the Class Vehicles are defective, and failing to provide adequate relief to Plaintiffs and California Class members.

215. The gravity of the harm resulting from Subaru's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Class Vehicles without providing an adequate remedy to cure the Defect harms the public at large and is part of a common and uniform course of wrongful conduct.

216. There are reasonably available alternatives that would further Subaru's business interests of increasing sales and preventing false warranty claims. For example, Subaru could have: (a) acknowledged the Defect and provided a permanent, effective fix for the Defect; and/or (b) disclosed the Defect prior to prospective consumers' purchases.

217. The harm from Subaru's unfair conduct was not reasonably avoidable by consumers. The Class Vehicles all suffer from the latent Defect, and Subaru has failed to disclose it. Plaintiff Beth Cusimano and California Class members did not

know of, and had no reasonable means of discovering, the Defect.

**Fraudulent Conduct**

218. Subaru's conduct is fraudulent in violation of the UCL. Subaru's fraudulent acts include knowingly and intentionally concealing from Plaintiff Beth Cusimano and the California Class members the existence of the Defect and falsely marketing and misrepresenting the Class Vehicles as being functional and not possessing a defect that would render them inoperable.

219. Subaru's misrepresentations and omissions alleged herein caused Plaintiff and the California Class members to purchase or lease their Class Vehicles or pay more than they would have had Subaru disclosed the Defect.

220. At all relevant times, Subaru had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the central functionality of the vehicle and creates a safety risk for drivers and passengers, and because Subaru made partial representations about the reliability, quality, and safety of the Class Vehicles but failed to fully disclose the Defect.

221. Accordingly, Plaintiff Beth Cusimano and California Class members have suffered injury in fact, including lost money or property, as a result of Subaru's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff Beth Cusimano and California Class members would not have purchased or leased their Class Vehicles at the prices they paid or would not have purchased or leased them at all.

222. Plaintiff Beth Cusimano seeks appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Subaru from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiff and California Class members any money Subaru acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

<u>**COUNT VIII**</u>
**Violations of the New York General Business Law**
**N.Y. Gen. Bus. Law § 349 ("NYGBL § 349")**
**(On Behalf of the New York Class)**

223. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

224. Plaintiff Christina Taylor brings this claim individually and on behalf of the New York Class.

225. NYGBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

226. In the course of Subaru's business in the conduct of trade or commerce, it willfully failed to disclose and actively concealed the Defect and the true reliability, safety, and quality of the Class Vehicles as set forth herein.

227. Accordingly, Subaru engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in NYGBL § 349, including representing that Class Vehicles have characteristic,

uses, benefits, and qualities that they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

228.  Subaru's deceit was directed at widely purchased consumer vehicles and consequently affects the public interest. Subaru's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

229.  Subaru's conduct proximately caused injuries to Plaintiff Taylor and New York Class members.

230. Plaintiff Taylor and New York Class members have suffered ascertainable loss as a result of Subaru's conduct in that Plaintiff and New York Class members paid more than they otherwise would have for their Class Vehicles and did not receive the benefit of their bargain, paid out-of-pocket costs relating to the Defect, and their Class Vehicles have suffered a diminution in value. These injuries are the direct, natural, and reasonably foreseeable consequence of Subaru's misrepresentations and omissions.

231.  Plaintiff Taylor, individually and on behalf of the New York Class, requests that this Court enter such orders or judgments as may be necessary to enjoin Subaru from continuing their unfair, unlawful, and deceptive practices. Plaintiff and

New York Class members are entitled to recover their actual damages or $50, whichever is greater. Subaru acted willfully or knowingly, so Plaintiff and New York Class members are entitled to recover three times their actual damages. Plaintiff and the New York Class are also entitled to reasonable attorneys' fees and expenses.

**COUNT IX**
**Violations of the New York General Business Law**
**N.Y. Gen. Bus. Law § 350 ("NYGBL § 350")**
**(On Behalf of the New York Class)**

232. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

233. Plaintiff Taylor brings this claim individually and on behalf of the New York Class.

234. NYGBL § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce . . . ."

235. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ." NYGBL § 350-a.

236. Subaru caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care

should have been known to Subaru, to be untrue and misleading to consumers, including Plaintiff Taylor and New York Class members.

237.  Subaru violated NYGBL § 350 because the representations or omissions regarding the Electrical System Sleep-State Defect in Class Vehicles as described above were material and likely to deceive a reasonable consumer.

238.  Plaintiff Taylor and New York Class members have suffered injury, including lost money or property, as a result of Subaru's false advertising. In purchasing or leasing Class Vehicles, Plaintiff Taylor and New York Class members relied on the misrepresentations and/or omissions of Subaru with respect to the reliability, safety, and quality of the Class Vehicles. Subaru's representations were untrue because the Class Vehicles are prone to suffer excessive battery failure, total loss of functionality, and serious safety risks as described herein due to the Defect. Had Plaintiff Taylor and the New York Class members known these true facts, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

239.  Accordingly, Plaintiff Taylor and New York Class members paid more than they otherwise would have for their Class Vehicles and did not receive the benefit of their bargain.

240. Plaintiff Taylor individually and on behalf of the New York Class, requests that this Court enter such orders or judgments as may be necessary to enjoin

Subaru from continuing its unfair, unlawful, and deceptive practices. Plaintiff and New York Class members are entitled to recover their actual damages or $50, whichever is greater. Subaru acted willfully or knowingly, so Plaintiff and New York Class members are entitled to recover three times their actual damages (of up to $10,000 per individual). Plaintiff and New York Class members are also entitled to reasonable attorneys' fees.

## COUNT X
### Violations of the Texas Deceptive Trade Practices Act
### (On Behalf of the Texas Class)

241. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

242. Plaintiff Greissinger brings this claim individually and on behalf of the Texas Class.

243. Plaintiff and each member of the Texas Class is a "consumer" as defined in the Texas Deceptive Trade Practices Act ("DTPA").

244. Defendants violated the following provisions of the DTPA: Tex. Bus. & Com. Code §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(7), §17.46(b)(20), and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs and each member of the Texas Class; and Tex. Bus. & Com. Code §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

245. Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA.

246. Defendants' conduct was a producing and/or proximate cause of actual damages to Plaintiff Greissinger and each member of the Texas Class.

247. Plaintiff Greissinger and Texas Class members demand judgment against Defendants for compensatory damages in an amount to be determined at trial. Plaintiff Greissinger and Texas Class members will seek treble damages for the intentional and knowing conduct of Defendant, together with reasonable attorneys' fees and costs.

248. Plaintiff Greissinger provided notice to Defendants pursuant to the Texas DTPA on April 27, 2026.

## COUNT XI
**Fraudulent Concealment**
**(On Behalf of the State Classes)**

249. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

250. Plaintiffs bring this claim, under the laws of their respective home states, individually and on behalf of their respective State Classes.

251. Subaru made material omissions concerning a presently existing or past fact in violation of common law. Subaru did not fully and truthfully disclose to its customers the true nature of the Electrical System Sleep-State Defect. A reasonable

111

consumer would not have expected the Defect in a new vehicle and especially not a Defect that rendered the vehicle inoperable, presenting a danger to drivers and passengers.

252. Subaru made these omissions with knowledge of their falsity and with the intent that Plaintiffs and Class Members rely upon them.

253. The facts concealed, suppressed, and not disclosed by Subaru to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles at all or at the offered price.

254. Subaru had a duty to disclose the true quality and reliability of the Class Vehicles because the knowledge of the Defect and its details were known and/or accessible only to Subaru; Subaru had superior knowledge and access to the relevant facts; and Subaru knew the facts were not known to, or reasonably discoverable by, Plaintiffs and Class Members. Subaru also had a duty to disclose because it made many affirmative representations about the qualities and reliability of its vehicles, including references as to safety and general operability, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual reliability of their vehicles.

255. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would

have paid less in doing so. Thus, Plaintiffs and the other Class Members were fraudulently induced to lease or purchase Class Vehicles, containing the Defect.

256. Plaintiffs and Class Members reasonably relied on Subaru's material omissions and suffered damages as a result. Subaru's conduct was willful, wanton, oppressive, reprehensible, and malicious. Consequently, Plaintiffs and Class Members are entitled to an award of punitive damages.

## COUNT XII
### Unjust Enrichment
### (On Behalf of the State Classes)

257. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

258. Plaintiffs bring this claim, under the laws of their respective home states, individually and on behalf of their respective State Classes.

259. This claim is pleaded in the alternative to the other claims set forth herein.

260. Plaintiffs lack an adequate remedy at law.

261. As the intended and expected result of its conscious wrongdoing, Subaru has profited and benefited from the purchase and lease of Class Vehicles that contain the Defect.

262. Subaru has voluntarily accepted and retained these profits and benefits, knowing that, as a result of its misconduct alleged herein, Plaintiffs and the Class

were not receiving Class Vehicles of the quality, nature, fitness, reliability, safety, or value that Subaru had represented and that a reasonable consumer would expect. Plaintiffs and the Class Members expected that when they purchased or leased a Class Vehicle, it would not contain a Defect that makes the vehicle inoperable and unreliable and poses a serious safety risk.

263. Subaru has been unjustly enriched by its deceptive, wrongful, and unscrupulous conduct and by its withholding of benefits and unearned monies from Plaintiffs and the Class rightfully belonging to them.

264. Equity and good conscience militate against permitting Subaru to retain these profits and benefits from its wrongful conduct. They should accordingly be disgorged or placed in a constructive trust so that Plaintiffs and Class Members can obtain restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, request that this Court enter an Order against Subaru providing for the following:

A. Certification of the proposed Class and/or State Classes, appointment of Plaintiffs and their counsel to represent the Class, and provision of notice to the Class;

B. An order permanently enjoining Subaru from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

114

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Equitable relief, including in the form of buyback of the Class Vehicles;

E.    Costs, restitution, damages, including punitive damages, treble or other multiple damages, penalties, and disgorgement in an amount to be determined at trial;

F.    An Order requiring Subaru to pay pre- and post-judgment interest as provided by law;

G.    An award of reasonable attorneys' fees and costs as permitted by law; and

H.    Such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims so triable.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated: May 1, 2026

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

**SAUDER SCHELKOPF LLC**
Matthew D. Schelkopf
Joseph B. Kenney
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs and the Proposed Class*

115

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated: May 1, 2026

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

**SAUDER SCHELKOPF LLC**
Matthew D. Schelkopf
Joseph B. Kenney
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0581
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs and the Proposed Class*

116

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINA TAYLOR, STUART SELIS, BETH CUSIMANO, and KARL GREISSINGER, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **JURY TRIAL DEMANDED** |
| SUBARU OF AMERICA, INC., a New Jersey Corporation, and SUBARU CORPORATION, a Japanese Corporation, | **CLRA VENUE AFFIDAVIT** |
| Defendants. | |

I, Beth Cusimano, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2. I am a Plaintiff in the above-captioned action.

3. I am a resident of Orange County, California.

4. I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*

5. The Class Action Complaint has been filed in the proper place for trial of this action because Defendant Subaru of America, Inc. maintains its corporate headquarters in this District, and both Defendants conduct substantial business in the District and intentionally and purposefully offer goods and services

1

within this District. Furthermore, a substantial part of the acts and omissions complained of occurred in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on ____4/30/2026_____  By: _____

DocuSigned by:

BETH CUSIMANO

D491BC2BF66B4B0...

Plaintiff Beth Cusimano

2